## TERRELL et al. v. COMMUNITY NATURAL GAS CO. et al.

### No. 12683.

Court of Civil Appeals of Texas. Dallas.
April 2, 1938.

Rehearing Denied May 28, 1938.

Wm. McCraw, Atty. Gen., and Alfred M. Scott, Leo G. Blackstock, William Madden Hill, and Harry Pollard, Assts. Atty. Gen., for appellants.

Roy C. Coffee, Marshall Newcomb, Warren J. Collins, and Robertson, Leachman, Payne, Gardere & Lancaster, all·of Dallas, for appellees.

LOONEY, Justice.

This appeal is from an order that we construe to be a temporary injunction, the decisive question presented being, whether the court below had jurisdiction of the suit. The following facts constitute the background of the controversy: On February 2, 1938, the Railroad Commission of Texas adopted and entered upon its minutes the following order:

"In the matter of announcing the policy of the Railroad Commission of Texas with reference to the fixing of Gas Rates within Cities and Towns and the Exercise by the Commission of concurrent original jurisdiction in incorporated Cities and Towns. } Gas Utilities Docket No. 129

"Austin, Texas, Feby 2, 1938

"On this the 2nd day of February 1938, came on for consideration by the Railroad Commission of Texas the matter of fixing adequate and fair gas rates to be charged for natural gas and natural gas service at the burner tip in the various cities and towns in Texas, and,

"It appearing to the Commission that under Articles 6050 to 6066, inclusive, Revised Civil Statutes of Texas, 1925, as amended, Vernon's Ann.Civ.St. art. 6050 et seq., the Railroad Commission of Texas is given concurrent original jurisdiction with the governing bodies of all incorporated cities and towns in the State of Texas,

in the matter of fixing just and fair rates to be charged at the burner tip for natural gas and natural gas service, and,

"It further appearing to the Commission that a great majority of the incorporated cities and towns of the State do not have the means with which to employ engineers, accountants and experts for the purpose of ascertaining the valuation of the property used and useful by gas companies in distributing gas or in ascertaining the fair and reasonable operating expenses incurred in such distribution; and that due to the lack of available funds with which to employ such assistants and prosecute rate cases to their final determination, such cities and towns cannot establish the fair and reasonable rates to be charged for gas, and

"It further appearing to the Commission that, under the provisions of the statutes enacted by the Legislature creating the Gas Utilities Division of the Railroad Commission of Texas, there was levied and is being paid by the consumers of gas in the State a tax of one-fourth of one percent of the gross receipts on natural gas, which said tax is for the purpose of regulating the natural gas industry and is passed on to the ultimate consumer in each respective city and town served in Texas, and

"It further appearing to the Railroad Commission of Texas that it has a staff of expert engineers and accountants whose services should be made available for the purpose of fixing burner tip rates within the cities and towns of the State,

"It is therefore declared and so ordered by the Railroad Commission of Texas that the services of such engineers, auditors and experts shall be and the same are hereby made available to the governing bodies of the incorporated cities and towns served by natural gas companies for the purpose of ascertaining the fair and reasonable rate to be fixed and charged for natural gas and natural gas service within such incorporated cities and towns of the State.

"It is further ordered by the Commission that the 189 towns affected by Gas Utilities Docket No. 111 and upon which work was being done, pursuant to said order in Docket No. 111, at the time Article 1119 was amended, Vernon's Ann.Civ.St. art. 1119, extending jurisdiction to incorporated cities and towns of two thousand population and less, be taken up first and completed upon application being filed with the Commission by said cities and towns, the work to proceed in the order in which said applications are filed with the Commission.

"Done at Austin, Texas, this 2nd day of February, 1938.

"Railroad Commission of Texas

"C. V. Terrell, Chairman

"Lon A. Smith, Commissioner

"Ernest O. Thompson, Commissioner".

In pursuance of the policy set forth in the order just copied, and, as authorized by statute therein mentioned, the Commission, on February 8, 1938, adopted and entered upon its minutes the following order:

"In the Matter of Determining a Fair and Reasonable Rate to be Charged for Natural Gas and Gas Service by the Community Natural Gas Company in the City of Trenton, Texas. | Gas Utilities Docket No. 130

"Whereas, the City Council of the City of Trenton, Texas, February 5, 1938, requested the Railroad Commission of Texas to exercise its lawful jurisdiction in determining a fair value of the property of the Community Natural Gas Company used and useful in serving natural gas in the City of Trenton and determining reasonable expense of said company in serving natural gas for the purpose of ascertaining fair and reasonable rates to be charged for natural gas and gas service; and

"Whereas, the City of Trenton by its duly enacted resolution of February 5, 1938, did relinquish its jurisdiction conferred by Article 1119, Revised Civil Statutes, 1925, as amended, Vernon's Ann.Civ.St. art. 1119, to the Railroad Commission of Texas and requested it to exercise its jurisdiction conferred by Articles 6050–6066, Revised Civil Statutes, 1925, as amended, said jurisdiction so conferred being original and plenary; and

"It appearing to the Railroad Commission of Texas that the City of Trenton is unable to employ the necessary technicians required to successfully prosecute a rate hearing looking toward the determination of fair and reasonable rates to be charged by the Community Natural Gas Company in the said City of Trenton.

"It is therefore ordered, adjudged, and decreed that the Community Natural Gas Company appear before the Railroad Commission of Texas at ten o'clock a. m.,

February 21st, 1938, in Trenton, Texas, and present full and detailed information as to its investment in serving natural gas in the City of Trenton as of December 31, 1936, and all information pertaining to income and expense in the conduct of its gas utility business in said City for the years 1931 to 1936, inclusive.

"It is further ordered that the Community Natural Gas Company submit any additional information in connection with its operations and investment in the City of Trenton the Railroad Commission may deem pertinent and necessary to the determination of fair and reasonable rates to be charged by said Company in the City of Trenton.

"Done at Austin, Texas, this the 8th day of February 1938.

"Railroad Commission of Texas
"C. V. Terrell, Chairman
"Lon A. Smith, Commissioner,
"Ernest O. Thompson, Commissioner".

The Cities Gas Company owns and operates natural gas distributing plants and systems in about 5 incorporated cities and towns of the State, including the City of El Paso; the Community Natural Gas Company owns and operates distributing plants and systems in about 200 incorporated cities and towns of the State, including the town of Trenton; in each of the cities and towns served by appellees, their customers are sold natural gas—for lighting, heating, power and other purposes—under franchise and ordinance rights and privileges granted by the cities and towns, respectively.

These two utility companies brought this suit against members of the Railroad Commission of Texas and certain of their agents, seeking injunctive relief, temporary and permanent; alleging in substance that, the defendants (appellants herein) were acting and threatening to act in excess of statutory authority, in exercising jurisdiction over matters affecting appellees, not conferred by statute—in that, they were ordering and directing appellees to produce information in regard to their operations and investments in the towns of Trenton and El Paso, assuming the right and jurisdiction to inspect the books and records of appellees; that agents of the Commission were checking the books and records of appellees in their offices in Dallas, and threatening to assume jurisdiction and authority to investigate their books and records, ostensibly for the

purpose of gathering information and data, in order to determine a fair and reasonable rate to be charged for gas by appellees; that the orders adopted by the Commission and action taken thereunder are void, because not authorized by law; and that, unless restrained, the proposed action of appellants will cause appellees irreparable injuries and damage, for which they have no speedy, complete and adequate remedy at law.

On February 18, 1938, the trial judge issued a restraining order, effective until March 14th, on which date a hearing on the application for a temporary writ was set. Upon request of appellants, the hearing was advanced and set for March 7th, at which time they urged a plea to the jurisdiction of the court, contending that, under Art. 6059, R.S., exclusive venue and jurisdiction of the suit were conferred upon "a court of competent jurisdiction in Travis County"; therefore, prayed that the restraining order be set aside and the cause dismissed. The court overruled appellants' plea to the jurisdiction and, after hearing the application for temporary injunction, entered an order March 8th, continuing the restraining order in effect until April 4th, directing appellants to appear and show cause "why a temporary injunction should not issue", to all of which appellants excepted, gave notice of and perfected this appeal.

Appellees contend that this court is without jurisdiction of the appeal, because the order of March 8th was simply a continuation of the restraining order, and not appealable. We overrule this contention. The trial court, having had a regular hearing on the application for a temporary injunction, evidence being introduced and arguments heard, the order entered, ostensibly continuing in effect the restraining order until April 4th, served the purpose of and in legal effect was, a temporary injunction, therefore appealable. See Alpha, etc., Co. v. Terrell, 122 Tex. 257, 59 S.W.2d 364, 372.

We think it obvious that appellees, considering themselves aggrieved by the action of the Commission, and, being dissatisfied with its orders and the action taken and threatened thereunder, brought this suit to enjoin the execution of the orders adopted by the Commission and the threatened action thereunder—that is, assuming authority to examine the books, records, etc., of appellees, for the purpose

of determining a fair and reasonable rate to be charged consumers of gas in said towns and cities. The case, in our opinion, is clearly within Art. 6059, R.S., over which jurisdiction is given—"a court of competent jurisdiction in Travis County". This jurisdiction being exclusive, the case is not removed from that category by reason of the insistence of appellees that the orders adopted and the acts had and threatened thereunder by appellants are utterly void. The provisions of the statute are explicit, to the effect that, where a gas utility (such as appellees) is "dissatisfied with the decision of any rate, classification, rule, charge, order, act or regulation adopted by the Commission, such dissatisfied utility or party may file a petition setting forth the particular cause of objection thereto in a court of competent jurisdiction in Travis County against the Commission as defendant * * *."

The contention of appellees is that, incorporated cities and towns, as authorized by Art. 1119 (amended in 1937, Vernon's Ann.Civ.St. Art. 1119), and Art. 1175, subd. 12, are given exclusive original jurisdiction to determine and fix the compensation to be charged by utilities for gas furnished customers in incorporated cities and towns; that the jurisdiction of the Commission over the subject is only appellate, as provided in Art. 6058; that the orders adopted by the Commission, and the action taken and threatened thereunder · complained of, being wholly unauthorized by statute, were void; hence the district court of Dallas County had jurisdiction to entertain the suit and grant the relief sought.

■ In disposing of the case, it will not be necessary for us to determine the jurisdiction, either of incorporated cities and towns or that of the Commission, to fix rates to be charged gas consumers in cities and towns; neither are we called upon to determine the extent of the appellate jurisdiction of the Commission under Art. 6058, as these questions are not presented for our decision. It is obvious that the Railroad Commission neither determined nor fixed rates to be charged for gas furnished in the town of Trenton, the City of El Paso, or elsewhere; but, in the exercise as we think, of its general supervisory control over the subject of oil and gas, conferred by the provisions of Title 102 R.C.S., art. 6004 et seq., and particularly by Art. 6053, the Commission and its agents were taking the initiatory steps to prosecute an investigation by an examination of the books, records, business operations, etc., of appellees, in order to intelligently determine what would be a fair and just rate to be charged for gas in said cities and towns. Appellees are utilities with reference to which Art. 6050, provides that: "Every such gas utility is hereby declared to be affected with a public interest and subject to the jurisdiction, control and regulation of the Commission as provided herein". They are required to maintain offices in the State (Art. 6052) where their books, papers, records, vouchers, etc., may at all times be found, and, under the direction of the Commission, inspected and audited by experts and accountants (Art. 6065); also said utilities may be required to file sworn reports as to their properties, business operations, etc. (Arts. 6056–6060), and by Art. 6053, "The Commission·after due notice shall fix and establish and enforce the adequate and reasonable price of gas and fair and reasonable rates of charges and regulations for transporting, producing, distributing, buying, selling and delivering gas by such pipe lines in this State; and shall establish fair and equitable rules and regulations for the full control and supervision of said gas pipe lines and all their holdings pertaining to the gas business in all their relations to the public, as the Commission may from time to time deem proper; and establish a fair and equitable division of the proceeds of the sale of gas between the companies transporting or producing the gas and the companies distributing or selling it; and prescribe and enforce rules and regulations for the government and control of such pipe lines in respect to their gas pipes lines, and producing, receiving, transporting and distributing facilities; and regulate and apportion the supply of gas between towns, cities, and corporations, and when the supply of gas controlled by any gas pipe line shall be inadequate, the Commission shall prescribe fair and reasonable rules and regulations requiring such gas pipe lines to augment their supply of gas, when in the judgment of the Commission it is practicable to do so; and it shall exercise its power, whether upon its own motion or upon petition by any person, corporation, municipal corporation, county, or commissioner's precinct showing a substantial interest in the subject, or upon petition of the Attorney General, or of any county or district attorney in any county wherein such business or any part thereof may be carried on."

■ The provisions of Art. 6053, supplemented by other provisions found in the statute germane to the subject, we think, have the effect of conferring upon the Commission an overlordship control and supervision of the affairs of gas utilities in regard to all matters, as expressed in the statute, "pertaining to the gas business in all their relations to the public, as the Commission may from time to time deem proper * *." "The public" referred to in the statute, we think, includes not merely the inhabitants of the sparsely settled communities and unincorporated villages of the State, such as are so located as to avail themselves of utility service, but includes the far greater portion of the public residing within the larger incorporated towns and cities. We think it unreasonable to presume that the Legislature intended that the elaborate and expensive set-up for the regulation and control of the gas-utility business was for the benefit alone of the relatively few consumers located without incorporated cities and towns. At the time of the enactment of Art. 1119 in 1907, and in 1913, when the Home Rule Act was passed (now subd. 12 of Art. 1175), conferring upon incorporated cities and towns the power to fix rates to be charged for gas, conditions were far different from those with which the public is confronted today. Natural gas as a commercial commodity was scarcely known, the gas customarily supplied the public was manufactured locally, hence the governing bodies of cities and towns were in a position to ascertain with reasonable accuracy data upon which to base fair and just rates; but today, utility companies own pipe lines that belt and ramify different sections of the State, supplying hundreds of incorporated cities and towns, and if excluded from the benefit of expert assistance through the ministry of the Railroad Commission in gathering accurate data upon which to intelligently base their rates, consumers of gas in the corporated cities and towns, in the main, will be as sheep before the shearer; we do not think it was the intention of the Legislature to leave them in such a plight.

The question of jurisdiction involves the construction of statutes in pari materia constituting one law, although enacted at different times and having no reference to one another; the effort being, to ascertain the uniform and consistent purpose of the Legislature; so, we think that, without reference to the ultimate decision—that is, whether or not the Commission and its agents were acting and proposing to act without authority of law, the tribunal set up by statute to make the adjudication is a court of competent jurisdiction in Travis County.

The activities of the Commission fall under four classifications—that is, (1) the regulation of railroad rates, etc., the right of appeal from their action in this respect is given by Arts. 6453, 6454, R.C.S.; (2) the regulation of motor busses and trucks, the appeal provisions of the statutes being Art. 911a, subd. 17 and Art. 911b, subd. 20; (3) the regulation and conservation of the oil and gas resources of the State, the appeal provision of the statute being Art. 6049c, § 8; Art. 6008, § 24; and (4) the regulation of gas utilities, the appeal provision being Art. 6059 now under consideration.

The several appeal provisions of the statutes have precisely the same purpose—that is, giving the affected industries the right to appeal from the action of the Commission. In the case of United, etc., Co. v. State, Tex.Civ.App., 89 S.W.2d 1104, writ refused, the question presented arose under the gas utilities provision of the Statute, same as the instant case. Construing Art. 6059, the Austin Court said (page 1105): "* * * Nor does the fact that appellant alleged that the rate was confiscatory confer venue or jurisdiction elsewhere than in Travis county, because article 6059 contemplates that any suit attacking the rate order upon any ground shall be brought, in so far as relates to the state court's jurisdiction or venue, in the district court of Travis county". The case of Altgelt v. Texas Co., Tex.Civ.App., 101 S.W.2d 1104, appeal dismissed, arose under the oil and gas conservation division of the Commission's activities; with reference to the jurisdiction provision the same court said (page 1106): "We find nothing in the provisions of section 8, art. 6049c, Vernon's Ann.Tex.Civ. Stats., limiting the district court of Travis county as to what it shall consider in passing on the validitiy of the Commission's order. Exclusive jurisdiction is given to such district courts 'to test the validity' of such order of the commission. And since such validity can be determined in no other forum, the Travis county district court is by necessary implication authorized to determine the question of title to the minerals involved, if that be necessary to determine

the validity vel non of the Commission's order".

The case of Allred v. Hudson, Tex.Civ. App., 62 S.W.2d 230, arose under the conservation provision of the statute, it being contended there, as here, that the action of the Commission was utterly void. Disposing of that contention, among other things, this court said (page 231): "We do not deem it necessary to discuss the subject, yet express the opinion that the proration act of the Legislature is a valid enactment, and that neither order of the Railroad Commission, complained of, is void upon its face, but, if it be conceded that the statute or orders of the commission, on proper judicial consideration, ought to be declared unconstitutional and void, still the question remains, what tribunal is clothed with power to pronounce the sentence of death? Appellee insists, strenuously, that, as the statute and orders are unconstitutional, no obligation rests upon him to comply. This is perfectly sound constitutional language, as said by Chief Justice Marshal in Marbury v. Madison, 1 Cranch, 137, 177, 2 L.Ed. 60, 'A legislative act contrary to the constitution is not law'; 'that an act * * * repugnant to the constitution, is void,' but appellants assert as strenuously that the statute and orders are perfectly valid, and that, as public officers, it is their duty to compel obedience thereto. So, in this situation, what tribunal is to judge between appellee and appellants? We think the following statute conclusively answers the question: Section 8 of an act adopted at the Fourth Called Session of the 42d Legislature (chapter 2), amending section 8 of chapter 26, Acts of the First Called Session of same Legislature (Vernon's Ann.Civ.St. art. 6049c, § 8), provides that: 'Any interested party affected by the conservation laws of this State relating to crude petroleum oil or natural gas, and the waste thereof, including this Act, or by any rule, regulation or order made or promulgated by the Commission thereunder, and who may be dissatisfied therewith, shall have the right to file a suit in a court of competent jurisdiction in Travis County, Texas, and not elsewhere, against the Commission, as defendant, to test the validity of said laws, rules, regulations or orders. * * *'" The recent case of Ex parte Lee, 127 Tex. 256, 93 S.W.2d 720, arose under the oil and gas conservation provision of the statute, with reference to its jurisdictional provision, the Supreme Court, through Justice Sharp, used the following language in point (page 724): "That the courts of Gregg county have no jurisdiction to set aside or annul the orders of the Railroad Commission, and that the courts of Travis county have exclusive jurisdiction of such matters, is now well established. Section 8, supra, is a jurisdictional and not a venue statute". To the same effect see: Terrell v. Alpha, etc., Co., Tex.Civ.App., 54 S.W.2d 821; Alpha Petroleum Co. v. Terrell, 122 Tex. 257, 59. S.W. 2d 364, 372; Magnolia Petroleum Co. v. Edgar, Tex.Civ.App., 62 S.W.2d 359, and Railroad Commission et al. v. Coleman Bros., Tex.Civ.App., 78 S.W.2d 697.

Because we are of opinion that the court below was without jurisdiction, the temporary injunction is dissolved and the application therefor is dismissed.

### On Motion for Rehearing.

YOUNG, Justice.

The sole question before us on this appeal is as to the jurisdiction of the trial court to entertain the suit, our conclusion being that exclusive jurisdiction is elsewhere, under Article 6059, R.C.S., with which I concur. But we should not go further and discuss the merits of other issues raised, thus exercising jurisdiction of questions which we hold the trial court had no authority to determine. As to the extent or nature of the lawful authority of appellants over gas utilities, under Title 102, R.C.S., art. 6004 et seq., and particularly Article 6053 thereof, I feel we should express no opinion, such matters being within the province of the original and appellate courts of Travis County to decide.

LOONEY, Justice.

While neither dissenting from the decision of the case nor questioning the soundness of the reasoning set forth in the original opinion, Associate Justice YOUNG has filed a paper, raising a question of propriety—that is, he says in part: "As to the extent or nature of the lawful authority of appellants over gas utilities, under Title 102 R.C.S., art. 6004 et seq., and particularly Article 6053 thereof I feel we should express no opinion, such matters being within the province of the original and appellate courts of Travis county to decide". Whether or not it was improper or unnecessary to have discussed the extent or

844

nature of the lawful authority of appellants over gas utilities, etc., may readily be determined when the question raised below and in this court is understood. As stated in the original opinion: "These two utility companies brought this suit against members of the Railroad Commission of Texas and certain of their agents, seeking injunctive relief, temporary and permanent; alleging in substance that, the defendants (appellants herein) were acting and threatening to act in excess of statutory authority, in exercising jurisdiction over matters affecting appellees, not conferred by statute * * *; that the orders adopted by the Commission and action taken thereunder are void, because not authorized by law; and that, unless restrained, the proposed action of appellants will cause appellees irreparable injuries and damage, for which they have no speedy, complete and adequate remedy at law". Pursuing this idea, appellees contended before this court: "that, incorporated cities and towns, as authorized by Art. 1119 (amended in 1937, Vernon's Ann.Civ.St. art. 1119), and Art. 1175, subd. 12, are given exclusive original jurisdiction to determine and fix the compensation to be charged by utilities for gas furnished customers in incorporated cities and towns; that the jurisdiction of the Commission over the subject is only appellate, as provided in Art. 6058; that the orders adopted by the Commission, and the action taken and threatened thereunder complained of, being wholly unauthorized by statute, were void; hence the district court of Dallas County had jurisdiction to entertain the suit and grant the relief sought".

Thus, I think it perfectly apparent that appellees sought to maintain the jurisdiction of the district court of Dallas County (as against the jurisdiction of the district court of Travis County) on the sole ground that, the action and proposed action of the Railroad Commission, sought to be enjoined, was absolutely void, because not authorized by statute. This being the only question raised by appellees, I am at a loss to understand how it could be considered an impropriety to discuss the same; in fact, I think it would have been the height of impropriety not to have given the only question raised a full discussion; failure to do so would be like presenting the play of Hamlet with Hamlet (chief character) omitted.