EICHHOLZ v. PUBLIC SERVICE COMMISSION OF MISSOURI ET AL.

No. 367. Argued February 1, 1939.—Decided February 27, 1939.

*Messrs. Smith B. Atwood* and *D. D. McDonald,* with whom *Mr. Frank E. Atwood* was on the brief, for appellant.

*Messrs. James H. Linton* and *Daniel C. Rogers* for appellees.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

This is an appeal from a decree of the District Court, composed of three judges, holding valid an order of the Public Service Commission of Missouri which revoked appellant's permit as an interstate carrier, and denying a permanent injunction restraining the Commission and certain state officers from prosecuting suits against appellant for using the highways of the State in the transportation of property for hire in interstate commerce. 23 F. Supp. 587.

By a supplementary answer, the Public Service Commission pleaded a counterclaim for fees alleged to be due to the State for the use of its highways since the granting of the restraining order which was issued on the institution of the suit. The District Court adjudged the defendants entitled to recover on the counterclaim and appointed a special master to take the necessary accounting. As the decree is not a final one so far as the counterclaim is concerned, the appellees move to dismiss the appeal. The motion is denied. The decree denied a permanent injunction and this Court has jurisdiction of a direct appeal from that part of the decree by virtue of the express provision of the statute. Judicial Code, § 266; 28 U. S. C. 380. Compare *Public Service Comm'n* v. *Brashear Freight*

*Lines,. ante,* p. 204. See *Smith* v. *Wilson,* 273 U. S. 388, 390, 391; *Stratton* v. *St. Louis Southwestern Ry. Co.,* 282 U. S. 10, 14.

Since 1931 appellant, Frank Eichholz, has operated freight trucks in interstate commerce between the States of Missouri, Iowa and Kansas and has maintained terminal facilities in St. Louis, Missouri, Kansas City, Kansas, and other places in Kansas and Iowa. Prior to the passage of the Federal Motor Carrier Act of 1935 (49 U. S. C. 301 *et seq.*), he obtained a permit from the Public Service Commission of Missouri "to operate as a freight carrying motor carrier over an irregular route" between points in Missouri and points beyond that State, "exclusively in interstate commerce." He did not seek or obtain from the Commission an intrastate permit.

On the passage of the federal act, appellant applied for a permit from the Interstate Commerce Commission, and that application was still pending at the time of the hearing below and argument here.

When the state permit was granted, and thereafter, there was in force Rule No. 44 of the Public Service Commission which provided as follows:

"No driver or operator operating under an interstate permit shall accept for transportation within this state any person or property known to be destined to a point within the State of Missouri. If such interstate carrier accepts within Missouri a passenger whose destination is beyond the limits of the State of Missouri, such passenger shall not be permitted to terminate his trip within the State of Missouri; and if such interstate carrier accepts within Missouri property destined to a point beyond the limits of the State of Missouri such property shall not be terminated within the State of Missouri."

In December, 1936, after hearing, the Commission revoked appellant's permit, holding this rule to have been violated. Its decision was based upon a finding that ap-

pellant had unlawfully engaged in intrastate commerce under the pretense of transacting interstate business; that as a subterfuge he had hauled freight originating in St. Louis, Missouri, and destined to Kansas City, Missouri, and *vice versa,* through his terminal in Kansas City, Kansas, which was located less than one-half mile from the Missouri state line. The Commission stated that the testimony showed an industrious solicitation by appellant for the transportation of freight between St. Louis, Missouri, and Kansas City, Missouri, on the basis of his quoted interstate rate between such cities as set forth in his tariff filed with the Interstate Commerce Commission, which rate was much lower than the established rate for intrastate carriers operating between these cities, and that by such means a large volume of business had been developed. It appeared that he was carrying freight at the interstate first-class rate of sixty cents per cwt. between St. Louis, Missouri, and Kansas City, Missouri, through his terminal at Kansas City, Kansas, while the similar intrastate freight rate established by the Public Service Commission between the two cities in Missouri was ninety-two cents per cwt.

On the challenge in this suit of the validity of the Commission's order, the District Court heard the evidence of the parties and found that the carriage of property from St. Louis, Missouri, to Kansas City, Kansas, and thence back into Kansas City, Missouri, for delivery, was not "the normal, regular or usual route" for shipping merchandise between the two cities in Missouri; that the route used by appellant to his terminal at Kansas City, Kansas, was through Kansas City, Missouri, and that the same traffic-ways were used in making deliveries of merchandise after it had been hauled in the first instance to the terminal; that after reaching the terminal in Kansas City, Kansas, appellant in many instances did not unload the merchandise, that much of such shipments was in

carload lots, and that the method employed was to haul the merchandise to his terminal in Kansas City, Kansas, "where a new driver, either with the same tractor and trailer, or with another tractor and the same trailer, would return the merchandise to Kansas City, Missouri"; that in some instances merchandise was actually unloaded at the depot in Kansas City, Kansas, and then distributed to the consignees in Kansas City, Missouri, but that this was "a negligible percentage of the shipment between Missouri points"; and that the method of operation which appellant employed was designed to afford shippers the benefit of a lower rate and was not in good faith.

*First.* By § 5268 (a) of the Missouri Bus and Truck Act (Laws of 1931, pp. 307, 308), the State declared it to be unlawful for any common carrier by motor to furnish service within the State without first having obtained from the Commission a certificate of public convenience and necessity. By § 5268 (b) it was declared unlawful for any motor carrier (with certain exceptions not material here) to use any of the public highways of the State in interstate commerce without first having obtained a permit from the Commission. It was provided that in determining whether such a permit should be issued, the Commission should give consideration "to the kind and character of vehicles permitted over said highway" and should require the filing "of a liability insurance policy or bond" in such sum and upon such conditions as the Commission might deem necessary to protect adequately the interest of the public in the use of the highway. The statute also authorized the Public Service Commission to prescribe regulations governing motor carriers.

Appellant's complaint did not attack these statutes; on the contrary he asserted that he had fully complied with their provisions. His complaint was of the or-

der of the Commission revoking his permit. We confine ourselves to the question thus presented.

*Second.* When the Commission revoked the permit, the Interstate Commerce Commission had not acted upon appellant's application under the Federal Motor Carrier Act and meanwhile the authority of the state body to take appropriate action under the state law to enforce reasonable regulations of traffic upon the state highways had not been superseded. *Welch Co.* v. *New Hampshire, ante,* p. 79; compare *McDonald* v. *Thompson,* 305 U. S. 263.

*Third.* Appellant did not seek from the state commission a certificate entitling him to do an intrastate business. Under the Commission's rule, he had his choice either to refrain from carrying property between points in Missouri or to secure a certificate of public convenience and necessity as an intrastate carrier. The validity of the requirement of such a certificate to promote the proper and safe use of the state highways is not open to question. *Hendrick* v. *Maryland,* 235 U. S. 610, 622; *Morris* v. *Duby,* 274 U. S. 135, 143; *Clark* v. *Poor,* 274 U. S. 554, 556, 557; *South Carolina Highway Dept.* v. *Barnwell Brothers,* 303 U. S. 177, 189; compare *Buck* v. *Kuykendall,* 267 U. S. 307, 315; *Interstate Busses Corp.* v. *Holyoke Ry. Co.,* 273 U. S. 45, 51; *Sprout* v. *South Bend,* 277 U. S. 163, 169.

Rule 44 was plainly designed to provide a safeguard against the use of an interstate permit to circumvent the requirement of a certificate for intrastate traffic. The rule simply sought to hold to his choice the one who had sought and obtained a permit exclusively for interstate transportation. Appellant was entirely free to conduct that transportation if he did not engage in the intrastate business for which he had deliberately refrained from qualifying himself. We cannot see that the rule on its

face imposed any improper burden upon interstate commerce and the question is whether it did so through the application that the Commission has made of it.

Appellant insists that the hauling from St. Louis over the state line to Kansas City, Kansas, of merchandise consigned to persons in Kansas City, Missouri, and hauling it back again to its intended destination in Kansas City, Missouri, was actually interstate transportation. *Hanley* v. *Kansas City Southern Ry. Co.,* 187 U. S. 617; *Western Union Telegraph Co.* v. *Speight,* 254 U. S. 17; *Missouri Pacific R. Co.* v. *Stroud,* 267 U. S. 404. That fact, however, does not require the conclusion that the State's action for the protection of its intrastate commerce was invalid. See *Lone Star Gas Co.* v. *Texas,* 304 U. S. 224, 238. We may assume that Congress could regulate interstate transportation of the sort here in question, whatever the motive of those engaging in it. But in the absence of the exercise of federal authority, and in the light of local exigencies, the State is free to act in order to protect its legitimate interests even though interstate commerce is directly affected. *Cooley* v. *Board of Wardens,* 12 How. 299, 319; *Morgan's S. S. Co.* v. *Louisiana,* 118 U. S. 455; *Smith* v. *Alabama,* 124 U. S. 465; *Kelly* v. *Washington,* 302 U. S. 1, 9, 10. If appellant's hauling of the merchandise in question across the state line was not in good faith but was a mere subterfuge to evade the State's requirement as to intrastate commerce, there is no ground for saying that the prohibition of the use of the interstate permit to cover such transactions, and the application of the Commission's rule prohibiting them in the absence of an intrastate certificate, was an unwarrantable intrusion into the federal field or the subjection of interstate commerce to any unlawful restraint. And if the prohibition of such transactions was valid, the Commission was undoubtedly entitled to enforce it by revoking appellant's permit for breach of

the condition upon which it was issued and accepted by appellant.

*Fourth.* The ultimate question is thus one of fact, whether the transactions of appellant were of the character described by the Commission and in the findings of the District Court.

The transcript of the record before the Commission was introduced before the court, but neither that evidence nor the additional evidence taken by the court is presented *in extenso* by the record here. The parties properly filed, in connection with this appeal, condensed statements of the evidence upon which they respectively relied. An examination of these statements discloses no reason for disturbing the court's findings.

Appellant stresses the fact that he had selected his terminal in Kansas City, Kansas, at the beginning of his operations as a motor carrier, about 1932, and that it was a convenient and proper location. But that fact does not alter the nature of the transactions under review. There was a variance in the testimony as to the extent of the appellant's business which was conducted in violation of his permit, but there was adequate basis for the court's finding that it was a considerable portion of his operations and justified the action of the Commission.

The decree of the District Court so far as it denies an injunction is

*Affirmed.*