30 F.Supp. 28 (1939)
COLUMBIA TERMINALS CO.
v.
LAMBERT et al.
No. 286.
District Court, E. D. of the Missouri, E. D.
October 23, 1939.
*29 Guy A. Thompson, Harold Lee Harvey, and Charles M. Spence, all of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., of counsel), for plaintiff.
Edgar H. Wayman, City Counselor, and Harold C. Hanke, Associate City Counselor, both of St. Louis, Mo., for defendants A. B. Lambert et al.
James H. Linton, General Counsel, Public Service Commission, and Daniel C. Rogers, Asst. Counsel, Public Service Commission, both of Jefferson City, Mo., for defendant Public Service Commission of Missouri.
Before THOMAS, Circuit Judge, and MOORE and COLLET, District Judges.
PER CURIAM.
Plaintiff has a contract with a number of railroads, including the St. Louis Terminal Railroad Association, to transport in motor vehicles over the highways of Missouri and Illinois less-than-carload quantities of freight coming into St. Louis on railroads having their eastern termini there, across the Mississippi River to the railroads' termini which have their western termini at East St. Louis, Illinois. The freight is then carried on to its destination by the eastern roads. Plaintiff also picks up less-than-carload quantities of freight for both the eastern and western railroads, from the consignors and delivers it to the railroads; issuing bills of lading in plaintiff's name designated as agent for the railroads and also delivers freight for both eastern and western railroads to consignees on either side of the river. This service has been conducted for more than twenty-five years in substantially the same manner, formerly by wagons, now exclusively by means of trucks.
There is a statute in Missouri which makes it unlawful for anyone to operate a motor vehicle for hire as a common carrier without first obtaining a permit from the Missouri Public Service Commission and paying a fee for the maintenance and repair of the State highways.[1]
Another Missouri statute defines the term "contract hauler" and makes it unlawful for anyone to operate motor vehicles on the highways of the State in the service of a contract hauler without obtaining a permit from the State Commission. No fee is charged for contract hauler operations but such operators are required to carry insurance and observe certain safety regulations.[2]
The Missouri statute gives the Public Service Commission authority to hold hearings *30 for the purpose of determining the type of the applicant's operations and issue permits. Secs. 5273 and 5274, Laws Mo. 1931, pp. 313, 314, Mo.St.Ann. §§ 5273, 5274, pp. 6691, 6692.
Plaintiff has never applied to the Missouri Commission for authority to perform the operations described, either as a contract hauler or a common carrier. On February 12, 1936, it did apply to the Interstate Commerce Commission in the name of the St. Louis Transfer Company for a permit to operate as an interstate common carrier of baggage of railway passengers between St. Louis, Missouri, and adjacent territory and East St. Louis, Illinois, and adjacent territory. This application was filed under the "Grandfather" clause of the Motor Carrier Act of 1935, section 206(a), 49 U.S.C.A. § 306 (a), which required a representation that it was such an operator on June 1, 1935, and had continued to be thereafter. No action had been taken on this application prior to the submission of this cause. Subsequently the Commission has indicated that this operation is not subject to Federal regulation under that Act.
On the same date, February 12, 1936, plaintiff filed with the Interstate Commerce Commission another application in its own name requesting a permit to operate as a contract carrier of general commodities between St. Louis, Missouri, and surrounding territory and East St. Louis, Illinois, and surrounding territory. This application was also made under the so-called "Grandfather" clause. Since the submission of this cause the Interstate Commerce Commission has held that this service is not subject to Federal regulation under the Motor Carrier Act of 1935.
Plaintiff holds a contract carrier's permit from the Interstate Commerce Commission, applied for May 19, 1937, authorizing the transportation of liquid petroleum products for the Shell Petroleum Corporation. This service appears to be unrelated to the service involved in this action.
Plaintiff has for several years held a contract hauler's permit issued by the Missouri Commission for another service unrelated to the service here involved. The Missouri Commission has notified plaintiff to show cause why this permit should not be revoked on the ground that plaintiff is a common carrier.
On July 20, 1939, the Metropolitan police of the City of St. Louis arrested the drivers of several of plaintiff's trucks operating between St. Louis, Missouri, and East St. Louis, Illinois, which were transporting freight under plaintiff's contracts with the railroads. The next day more arrests were made and plaintiff informed that those arrests would continue until plaintiff had secured permits from the Missouri Commission authorizing the operations. This action followed. A preliminary restraining order was issued, a statutory three-judge court convened, and the application for an interlocutory injunction presented to that court upon the verified complaint and affidavits offered by the parties.
Jurisdiction of a Federal Court is based upon diversity of citizenship and the amount in controversy. Plaintiff is a Delaware corporation. Defendants are citizens of Missouri. The amount of state taxes involved, should plaintiff be classified a common carrier, is from $50,000 to $225,000 and the annual volume of plaintiff's business which plaintiff alleges will be destroyed, absent relief, is approximately $770,000.
*31 Jurisdiction of a statutory three-judge court is predicated upon the charge that (1) the state statute which makes it unlawful for plaintiff to operate its vehicles for hire as a contract hauler or common carrier is now unconstitutional and void under the commerce clause (U.S.C.A.Const. art. 1, § 8, cl. 3) because of the enactment of the Motor Carrier Act of 1935, 49 U.S. C.A. § 301 et seq., and (2) if Section 5271 (a) supra, applies to interstate contract haulers it is unconstitutional for the foregoing reason and for the further reason that it requires a showing of public benefit by the applicant in violation of the commerce clause, and, that, (3) the acts of the defendant state officers unless restrained will deprive plaintiff of its property without due process of law.
The first ground assigned as a basis for the claim of unconstitutionality of the state statutes is without merit. That state regulatory laws relating to the operation of motor vehicles in interstate commerce were not superseded upon the enactment of the Motor Carrier Act of 1935 has now been definitely determined, Eichholz v. Public Service Commission of Missouri, 306 U.S. 268, 622, 59 S.Ct. 532, 83 L.Ed. 641; H. P. Welch Co. v. New Hampshire, 306 U.S. 79, 59 S.Ct. 438, 83 L.Ed. 500; South Carolina Hwy. Dept. v. Barnwell Bros., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734.
In the Eichholz case the State Commission had revoked an interstate permit for certain infractions and was prosecuting or threatening to prosecute suits against the carrier for using the highways of the state. The carrier contended that the Motor Carrier Act of 1935 was supreme and exclusive and that he was not subject to supervision by state authorities. Eichholz v. Hargus, D.C., 23 F.Supp. 587, loc. cit. 589. On appeal the Supreme Court said [306 U.S. 268, 622, 59 S.Ct. 534, 83 L.Ed. 641]:
"When the Commission revoked the permit, the Interstate Commerce Commission had not acted upon appellant's application under the Federal Motor Carrier Act and meanwhile the authority of the state body to take appropriate action under the state law to enforce reasonable regulations of traffic upon the state highways had not been superseded." Citing Welch Co. v. New Hampshire, supra.
Since the Interstate Commerce Commission has not assumed authority to regulate plaintiff's operations here involved the authority of the state to regulate those operations has not been superseded. It may be true that even should the Interstate Commerce Commission assume such authority and thereby enter the field, the State may still have the right to classify interstate carriers for the purpose of proper taxation as distinguished from regulation, but since it is unnecessary to determine that question we do not do so.
Secondly, it is asserted that relief is justified upon the ground that Sec. 5271 (a), Laws Mo.1931, p. 310, supra, Mo.St. Ann. § 5271 (a), p. 6687, in providing that: "If the commission shall find from the evidence that the public will be benefited by the creation of the proposed service, or any part thereof, as the commission shall determine, a contract hauler's permit therefor shall be issued. In determining whether or not a permit should be issued, the commission shall give reasonable consideration to the transportation service being furnished by any railroad, street railroad, motor carrier, or contract hauler, and the effect which such proposed transportation service may have upon other transportation service being rendered."  gives the State Commission the power to impede or prevent interstate transportation upon the ground of lack of public benefit  a power not incident to proper taxing power or police regulation, and hence an unconstitutional interference with interstate commerce.
Since this Statute applies to interstate as well as intrastate contract haulers, if the complaint alleged or the evidence disclosed such action on the part of the State Commission, plaintiff would be entitled to relief from such action on the part of the state officials. Absent action under the federal statute, the power of the State to regulate or burden interstate commerce extends only to acts consistent with an exercise of police power or proper taxing power. Reasonable police regulations are not an unlawful burden upon interstate commerce and are justified so long as Congress has not occupied the field. Continental Baking Co. v. Woodring, 286 U.S. 352, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L. R. 1402; Sproles v. Binford, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167; Bradley v. Pub. Util. Comm'n, 289 U.S. 92, 53 S. Ct. 577, 77 L.Ed. 1053, 85 A.L.R. 1131; Sprout v. South Bend, 277 U.S. 163, 48 S. Ct. 502, 72 L.Ed. 833, 62 A.L.R. 45. Neither does the levying of a tax for the sole *32 purpose of requiring equitable contribution to the cost of maintenance and repair of highways used, fall within the category of an unlawful burden on interstate commerce. Hendrick v. Maryland, 235 U.S. 610, 35 S.Ct. 140, 59 L.Ed. 385; S. C. Highway Dept. v. Barnwell Bros., supra; Dixie Ohio Co. v. Comm'n, 306 U.S. 72, 59 S.Ct. 435, 83 L.Ed. 495. But when the State goes further and undertakes to exercise the right to say what interstate commerce will benefit the State and what will not, such action, with certain exceptions immaterial here,[3] constitutes an unconstitutional violation of the commerce clause.
Defendants recognize this principle and assert that the State has never construed this statute to authorize such action and emphatically disavow any present or past intention to so enforce it. Whether we could accept defendants' somewhat informal disclaimer might well be debatable.[4] However, we not only can but must accept the allegations of the complaint and plaintiff's proffered evidence in determining the propriety of the issuance of an interlocutory injunction. Nowhere in the complaint does it appear that the State Commission is refusing or has indicated an intention to refuse to issue a permit on those grounds. Nowhere is it alleged or shown that the State Commission has so construed the Statute or threatens to do so. The mere susceptibility of a statute to a construction which could render it unconstitutional does not afford sufficient ground for injunctive relief where, as here, it does not appear that the Statute has ever been so construed, where the enforcing authorities affirm a recognition of its unconstitutionality if so construed and disclaim any intention to do so, and where plaintiff's real ground for relief is not the application of the Statute to it. Clark v. Poor, 274 U.S. 554, 47 S.Ct. 702, 71 L.Ed. 1199. Furthermore, should it be determined that plaintiff is a common carrier questions concerning statutes relating to "contract haulers" will become immaterial. Grolbert v. Board of Railroad Commissioners of State of Iowa, D.C., 60 F.2d 321.
The same may be said concerning plaintiff's assertion that the State Commission has some ill-advised rule to the effect that a contract hauler's permit will not be issued to anyone having more than a predetermined arbitrary number of contracts. There is no allegation or proof that plaintiff fears or is threatened with injury as a result of the existence of such a rule. In fact, the thing complained of and from which relief is sought is the arresting of plaintiff's drivers and the alleged threatened intention of the State Commission to apply the State common carrier statute to plaintiff's operations and subject plaintiff to the tax provided by the latter act.
Plaintiff's operations clearly fall within the definition of a motor carrier or a contract hauler, hence those operations are susceptible to regulation by the State until the Interstate Commerce Commission has assumed that regulation. Therefore, plaintiff is not entitled to an order restraining defendants from arresting its drivers or interfering with its operations absent State authority for those operations upon the ground that the State statutes have been superseded.
One further contention of importance is presented. Plaintiff charges that the arrests made and those threatened by the police are for the purpose of compelling plaintiff to secure a motor carrier permit from the State Commission with the attendant payment of fees. This charge is based upon the assumption that the Public Service Commission will not grant an application for a contract hauler's permit authorizing the carriage involved and that the only authority which plaintiff can obtain from the commission will be a motor carrier's permit. The fear on the part of the plaintiff that its case has been prejudged by the Commission is not without foundation, as is disclosed by the record. The Commission has recently ordered the plaintiff to appear and show cause why its contract hauler's permit covering certain intrastate operations in Southeast Missouri should not be revoked. The order recites that in two cases the Commission has heard testimony concerning the nature of the operations carried on by plaintiff and that in each instance the Commission has held that plaintiff could not qualify as a contract *33 hauler because of its common carrier operations. The order further states that the Commission does not deem it in conformity with the legislative intent that a transporter of property by motor vehicle should be permitted to operate in a dual capacity (that is, as a contract hauler and as a common carrier) at the same time and in the same territory, and that it is inconsistent with proper policies of regulation. In one of the cases referred to in the order the plaintiff's application for a contract hauler's permit to engage in the interstate transportation of gasoline, kerosene and distillate for the Shell Petroleum Corporation was denied although there was in evidence before the Commission a certified copy of a report of the Interstate Commerce Commission indicating that a permit would be issued by that body authorizing the applicant to operate as a contract hauler by motor vehicle of petroleum products in tanks over a regular route between Roxana, Illinois, and points in Missouri.
In refusing the application the State Commission stated that in view of the evidence before it the plaintiff cannot now qualify as a contract hauler "for the reason that its principal business is not that of a contract hauler but that the major portion of its activities are devoted to other lines of business. It is clearly engaged in operation as a common carrier in all of the transportation service which it renders for the railroads and for the Terminal Railroad Association. These latter operations are unquestionably performed in the rendition of a common carrier service in conjunction with that of the railroads."
The plaintiff has not applied to the Commission for a permit authorizing the phase of its operations now before this Court. These operations are clearly within the regulatory laws of Missouri covering the operation of busses and trucks upon its highways, at least until some appropriate action is taken by the Interstate Commerce Commission. Whether the State of Missouri may require that an interstate carrier engaged in both common carrier and contract hauler operations over its highways  even though these activities be kept distinctly separate in scope  submit all of its operations to the force of the regulatory and taxing statutes of Missouri relating to common carriers; whether the Missouri Commission may refuse a contract hauler's permit covering a phase of a carrier's operations as to which the Interstate Commerce Commission has previously granted it authority to operate as a contract hauler under the federal statutes; whether the operations of the plaintiff involved here are those of a common carrier or a contract hauler are important and difficult questions. These issues should not be decided until they are appropriately presented to a Federal Court, and then only in the light of full argument.
It is apparent that this Court does not have jurisdiction to determine these issues. A three-judge Court may not assume jurisdiction in the absence of a substantial claim that the State Statute, if applicable, is unconstitutional. Ex parte Buder, 271 U.S. 461, 46 S.Ct. 557, 70 L.Ed. 1036; California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323. The plaintiff urges that the Missouri statutes are unconstitutional in but two respects:
First, that Missouri may no longer determine its status as a carrier in interstate commerce since, it contends, that duty now devolves upon the Interstate Commerce Commission under the Federal Motor Carrier Act which superseded the Missouri statutes. This contention has been given a conclusively adverse answer in Eichholz v. Public Service Commission of Missouri, supra.
Second, that the requirement of a showing of a public benefit as a condition precedent to the issuance of a contract hauler's permit, if applicable to interstate carriers, is unconstitutional. That issue is not before us.
The plaintiff's third contention does not raise the issue of whether the Missouri statutes are unconstitutional; the charge is that the defendant state officers are acting in an unconstitutional manner in arresting the drivers of its trucks engaged in the operations heretofore described. These operations are subject to the laws of Missouri, and no adequate grounds appear to justify an injunction restraining the enforcement of the Missouri laws. Whether the Missouri Commission will improperly adjudge the plaintiff's status to be that of a common carrier in respect to the commerce involved is a question which the plaintiff may not anticipate. One who is within the terms of a statute, valid upon its face, that requires a license or certificate as a condition precedent to carrying on business may not complain because of his anticipation of improper or *34 invalid action in administration. Smith v. Cahoon, 283 U.S. 553, 562, 51 S.Ct. 582, 75 L.Ed. 1264; Continental Baking Co. v. Woodring, 286 U.S. 352, 369, 52 S.Ct. 595, 76 L.Ed. 1155, 81 A.L.R. 1402; Lehon v. City of Atlanta, 242 U.S. 53, 56, 37 S.Ct. 70, 61 L.Ed. 145; Dalton Machine Co. v. Va., 236 U.S. 699, 701, 35 S.Ct. 480, 59 L. Ed. 797; Gundling v. Chicago, 177 U.S. 183, 186, 20 S.Ct. 633, 44 L.Ed. 725. The plaintiff has neglected to make application for a permit covering its operations in which the arrests of its drivers occurred since 1931, when the statute became effective. Until it does so, it is not in a position to invoke the injunctive powers of this Court to restrain the enforcement of the State laws. "The long-settled rule of judicial administration [is] that no one is entitled to judicial relief * * * until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Corp., 303 U.S. 41, 50, 51, 58 S.Ct. 459, 463, 82 L.Ed. 638. And, where the defect in the bill is incapable of remedy by amendment, its dismissal must be ordered. Myers v. Bethlehem Corp., supra, 303 U.S. at page 53, 58 S.Ct. at page 465, 82 L.Ed. 638.
The order will be that the bill be dismissed for want of jurisdiction because of the absence of a substantial federal question. See California Water Service Co. v. Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323; Norumbega Co. v. Bennett, 290 U.S. 598, 54 S.Ct. 207, 78 L.Ed. 526, same case, D.C., 3 F.Supp. 500, 502.
NOTES
[1] Sec. 5268(b), Laws Mo.1931, p. 308, Mo.St.Ann. § 5268(b), p. 6684. "It is hereby declared unlawful for any motor carrier * * * to use any of the public highways of this state for the transportation of persons or property, or both, in interstate commerce without first having obtained from the commission a permit so to do. * * *" (Italics ours).

Sec. 5264(b), Laws Mo.1931, p. 304, Mo. St.Ann. § 5264, p. 6679. "The term `motor carrier,' when used in this act, means any person, firm, partnership, association, joint-stock company, corporation, lessee, trustee, or receiver appointed by any court whatsoever, operating any motor vehicle with or without trailer or trailers attached, upon any public highway for the transportation of persons or property or both or of providing or furnishing such transportation service, for hire as a common carrier. * * *"
[2] Sec. 5271(a), Laws Mo.1931, p. 310, Mo.St.Ann. § 5271(a), p. 6687. "It is hereby declared unlawful for any contract hauler * * * to operate or furnish transportation for persons or property, or both, for hire over the highways of this state, without first have (having) obtained from the commission a contract hauler's permit. * * * If the commission shall find from the evidence that the public will be benefited by the creation of the proposed service, or any part thereof, as the commission shall determine, a contract hauler's permit therefor shall be issued. In determining whether or not a permit should be issued, the commission shall give reasonable consideration to the transportation service being furnished by any railroad, street railroad, motor carrier, or contract hauler, and the effect which such proposed transportation service may have upon other transportation service being rendered. * * *" (Italics ours).

Sec. 5264(c) Laws Mo.1931, p. 305, Mo. St.Ann. § 5264(c), p. 6679. "The term `contract hauler,' when used in this act, means any person, firm or corporation engaged, as his or its principal business, in the transportation for compensation or hire of persons and/or property for a particular person, persons, or corporation to or from a particular place or places under special or individual agreement or agreements and not operating as a common carrier * * *."
[3] See Joseph S. Finch & Co. v. McKittrick, 305 U.S. 395, 59 S.Ct. 256, 83 L. Ed. 246; Buck v. Kuykendall, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623, 38 A.L.R. 286; Bush & Sons Co. v. Maloy, 267 U. S. 317, 45 S.Ct. 326, 69 L.Ed. 627.
[4] Clark v. Poor, 274 U.S. 554, 556, 557, 558, 47 S.Ct. 702, 71 L.Ed. 1199; Grolbert v. Board of R. Comm's of Iowa, D. C., 60 F.2d 321, 323.