## QUERNER v. RAILROAD COMMISSION OF TEXAS et al.

### No. 9952.

Court of Civil Appeals of Texas. Austin.

Jan. 24, 1951.

Rehearing Denied Feb. 14, 1951.

A. M. Felts, Austin, for appellant.

Price Daniel, Atty. Gen., Charles E. Crenshaw and Durwood M. Goolsby, Asst. Attys. Gen., for appellees.

ARCHER, Chief Justice.

This suit involves a statutory appeal under the provisions of Section 20, Article 911b, V.A.C.S., from an order of the Railroad Commission of Texas, appellee, dated October 18, 1950. The order cancels a certificate theretofore issued to W. A. Querner, doing business as Thru Truck Service, appellant, authorizing him to transport interstate commerce only, over the highways of the State of Texas, between San Antonio and Houston, Texas. The suit was instituted by appellant in

the 98th Judicial District Court, Travis County, Texas, on the 17th day of November, 1950. On that date the judge of that court issued and ordered a temporary restraining order, restraining the Railroad Commission·of Texas, its members, agents, servants and employees, from interfering with appellant's business, from arresting his drivers, and from prohibiting him from transporting commodities in interstate commerce between Houston and San Antonio, Texas, and setting a hearing on appellant's application for a temporary injunction in like terms as the temporary restraining order for 10:00 a. m., November 27, 1950.

Hearing on appellant's application for a temporary injunction was held on that date and the court denied the same, but continued the restraining order theretofore entered in full force and effect until December 7, 1950. Judgment denying appellant's application for a temporary injunction was duly entered on the 28th day of November, 1950, from which appellant duly perfected his appeal to this court.

This court on the 6th day of December, 1950, entered a judgment extending the trial judge's restraining order until this appeal is finally disposed of.

On June 21, 1944, the Interstate Commerce Commission issued to appellant a certificate of public convenience and necessity, authorizing him to transport general commodities, with certain exceptions,· in interstate or foreign commerce between San Antonio, Texas, and Houston, Texas.

On the 9th day of March, 1944, the Railroad Commission of Texas issued its certificate No. 3059 to appellant, authorizing him to operate a · common carrier service in interstate transportation only within the State of Texas over the following highways of this State: State Highway No. 3, between San Antonio and Seguin; State Highway No. 3A, between Seguin and Waelder; State Highway No. 3, between Waelder ,and junction with Highway 73, near Columbus; State Highway No. 73, between junction with No. 3 near Columbus and Houston; U. S. Highway No. 90, between San Antonio and Seguin; U. S.

Highway No. 90, between Waelder and junction with State Highway No. 73.

This certificate contained the following restrictions:

"Nothing herein shall be construed to authorize the transportation for compensation of commodities in intrastate commerce from any Texas point to another Texas point, and the applicant is hereby prohibited from engaging in any such operation.

\*     \*     \*     \*     \*     \*

"This certificate or permit to remain in effect from and after the date hereof,. subject to the provisions, limitations and restrictions of Chapter 314, Acts Regular Session of the Forty-first Legislature, 1929,. and all amendments thereto, as well as the rules, regulations and decisions of the courts, and the rules and regulations of the Railroad Commission of Texas, heretofore prescribed, or which may be hereafter prescribed under and pursuant to the authority conferred upon it by law.'"

On May 15, 1950, George E. Hughes, Chief Law Enforcement Officer for the Motor Transportation Division of the Railroad Commission of Texas, filed a complaint with the Railroad Commission, in which he alleged that on some twenty-three different occasions appellant transported goods in intrastate commerce between Houston and San Antonio, Texas,. for compensation, in violation of his certificate of authority from the Railroad Commission, the laws of this State and' the rules and regulations of the Railroad Commission, and prayed that appellant be cited to appear and show cause why his. certificate No. 3059 should not be cancelled..

After due notice, hearings on the above· complaint were. held by the Railroad Commission on June 8, 1950; August 8, 1950;. and October 6, 1950, and on October 18,. 1950, the Commission issued its order can-- celling appellant's certificate No. 3059,. which is here attacked by appellant.

Appellees contend that the Railroad Commission had the power and authority to· make the order cancelling the certificate· issued by it to appellant, and that the same is reasonably supported by substantial evidence and· thus legal and valid.

The order of March 9, 1944, authorizing the use of the highways, is in part as follows:

"This certifies that the Railroad Commission of Texas is of the opinion that the use of the highways designated in said application by such motor vehicles as are described therein will not interfere with the reasonable use made of said highways by the public for highway purposes, and that the operation of such motor vehicles will not impose an undue burden on the said highways. Accordingly Permission Is Hereby Granted To:

"W. A. Querner, DBA Thru-Truck Service * * * To Operate a Common Carrier motor carrier service in Interstate transportation service within the State of Texas * * * over the highways of Texas as follows: (Designating them).

 * * * * *

   "Interstate
"Page No. 2  Certificate No. 3059
"Application No. —  or
"Docket No. A–898 Permit No.———
 * * * * * *

"Nothing herein shall be construed to authorize the transportation for compensation of commodities in Intrastate commerce from any Texas point to another Texas point, and the applicant is hereby Prohibited from engaging in any such operation.

"In The Event the Interstate Commerce Commission shall hereafter revoke or restrict the authority heretofore granted by it to applicant, then the authority herein granted to use a portion of the highways in the State of Texas shall become Null and Void, or Restricted, in accordance with any such order of the Interstate Commerce Commission.

"This Certificate Or Permit to remain in effect from and after the date hereof, subject to the provisions, limitation, and restrictions of Chapter 314, Acts Regular Session of the Forty-first Legislature, 1929, and all amendments thereto, as well as the rules, regulations, and decisions of the courts, and the rules and regulations of the Railroad Commission of Texas, heretofore prescribed, or which may be hereafter prescribed under and pursuant to the authority conferred upon it by law."

On May 15, 1950, a complaint was filed charging that the appellee, in twenty-three counts, transported in intrastate commerce from Houston, Texas, to San Antonio, Texas, for compensation certain shipments recieved from Kelley Manufacturing Company, and there delivered said shipments to an unknown consignee. The complaint stated:

"That each and all of the shipments enumerated in this complaint were each and all known to W. A. Querner, DBA Thru-Truck Service, to be intrastate shipments moving in intrastate commerce, and that each and all of said shipments were transported by W. A. Querner, DBA Thru-Truck Service, with intent to violate the terms, provisions, and restrictions of Common Carrier Certificate No. 3059, and that said defendant continues and intends to continue to transport shipments moving in Intrastate commerce in violation of the terms, provisions, and restrictions of said Certificate No. 3059.

"Wherefore the said Geo E. Hughes, Chief Law Enforcement Officer of the Motor Transportation Division of the Railroad Commission of Texas prays that W. A. Querner, DBA Thru-Truck Service, be cited to appear before the Railroad Commission of Texas at such time and place as may be designated, to show cause why Interstate Common Carrier Certificate No. 3059 should not be cancelled for acts and violations alleged in this complaint, and for failure to comply with legal orders and rules and regulations of the Railroad Commission of Texas, and that after such hearing and failure to show cause, said Interstate Certificate No. 3059 be cancelled."

On October 18, 1950, the Commission entered its order cancelling its order No. 3059, and reciting its findings that W. A. Querner, DBA Thru-Truck Service, had on the occasions charged in the complaint transported under shipper's orders intrastate shipments; that the shipments moved in truck load lots; the Commission further finding:

"This certificate No. 3059 authorizes the carrier to operate a motor carrier service in interstate commerce over the highways as described in the certificate. The carrier has no authority under this certificate to use the highways of Texas for any purpose other than the movement of interstate freight. Further, W. A. Querner, dba Thru Truck Service, has no authority whatever from the Railroad Commission of Texas to use the highways of Texas in the transportation of intrastate freight, and his operations in that respect are wholly unauthorized and unlawful and in violation of his certificate issued by the Railroad Commission of Texas.

"The Commission is, therefore, of the opinion that the authority contained in Interstate Certificate No. 3059 to use the highways of Texas as an interstate carrier should be cancelled,—Accordingly, it is

"Ordered * * * that * * * Certificate No. 3059, * * * be, and the same is hereby in all things Cancelled, and the carrier is prohibited from using the highways described in that certificate."

This appeal is founded on three points assigned as error by the appellant, and are as follows:

"Point One: The only authority the Railroad Commission of Texas has with respect to interstate commerce is to make a finding as to whether or not the roads over which the operation is to be carried on are sufficient to carry the traffic without unduly burdening the roads, and having made that finding can only cancel the certificate by a further finding to the effect that the use that the appellant is making of the roads is having the effect of placing an undue burden thereon, rendering the same unsafe for ordinary highway purposes.

"Point Two: Since the statutes provide ample penalties for those transporting intrastate commerce without Railroad Commission of Texas authority, the Railroad Commission of Texas is wholly without authority to cancel the appellant's authority to use the roads in intrastate commerce as a punishment for transporting intrastate commerce.

"Point Three: The enforcement of the Railroad Commission's order would not only place an unlawful and unauthorized burden upon interstate commerce but would have the effect of entirely prohibiting interstate commerce by the appellant over the roads, and is utterly void."

The authority the Railroad Commission has with respect to the use of the roads is that found in Article 911b, Secs. 3 and 4, V.A.C.S., which reads as follows:

"Sec. 3. No motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation. No motor carrier shall, after this Act goes into effect, operate as a contract carrier without first having obtained from the Commission a permit so to do, which permit shall not be issued until the applicant shall have in all things complied with the requirements of this Act. As amended Acts 1931, 42nd Leg., p. 480, ch. 277, § 3.

"Sec. 4. (a) The Commission is hereby vested with power and authority and it is hereby made its duty to supervise and regulate the transportation of property for compensation or hire by motor vehicle on any public highway in this State, to fix, prescribe or approve the maximum or minimum or maximum and minimum rates, fares and charges of each motor carrier in accordance with the specific provisions herein contained, to prescribe all rules and regulations necessary for the government of motor carriers, to prescribe rules and regulations for the safety of operations of each of such motor carriers, to require the filing of such monthly, annual or other reports and other data of motor carriers as the Commission may deem necessary, to prescribe the schedules and services of motor carriers operating as common carriers, and to supervise and regulate motor carriers in all matters affecting the relationship between such carriers and the shipping public whether herein specifically mentioned or not. As amended Acts 1931, 42nd Leg., p. 480, ch. 277, § 4.

"(b) Repealed. Acts 1941, 47th Leg. p. 245, ch. 173, § 2.

"(c) The Commission is further authorized and empowered, and it shall be its duty, to supervise and regulate motor carriers in all matters affecting the relationship between such motor carriers and the shipping public that may be necessary in the interest of the public.

"(d) The Commission is further authorized and empowered, and it shall be its duty, to supervise and regulate motor carriers in all matters whether specifically mentioned herein or not so as to carefully preserve, foster and regulate transportation and to relieve the existing and all future undue burdens on the highways arising by reason of the use of the highways by motor carriers, adjusting and administering its regulations in the interest of the public."

■ It is to be noted that there is no specific provision in the Motor Carrier Law giving the Railroad Commission of Texas the authority to issue any type of interstate certificate, but the Railroad Commission exercises its power to the extent of protecting the roads against undue burdens, and the authority to issue certificates to interstate carriers for the use of the roads is based upon the general authority contained in the sections above quoted.

When applicant applied for a *use* or road *right* permit or certificate, the Commission was concerned only with the question of the sufficiency of the particular highways to carry the additional traffic without an undue interference with the reasonable use made of said highways by the public for highway purposes, and that the operation of such motor vehicles would not impose an undue burden on the said highways.

The complaint made against Querner of the several violations of the law in transporting goods in intrastate commerce does not make a charge that the use being made of the highways by Querner interferes with the reasonable use made of said highways by the public, or places an undue burden on the said highways.

We are, therefore, required to determine if the Commission can cancel the certificate of *use* of, or permit to use, the highways once having been granted to an interstate common carrier, in the manner done in the instant case, which was an allegation of a series of violations of the penal statutes; and without a charge of undue burden on the highways or an unreasonable interference with the use of the highways by the public.

■ We do not believe the Commission has such authority.

In the case of Smith v. Wald Transfer & Storage Co., Tex.Civ.App., 97 S.W.2d 991, 994, this court held that: " * * * That case (Railroad Comm. of Texas v. Red Arrow Freight Lines, Tex.Civ.App., 96 S.W.2d 735) involved intrastate commerce only, and the commission had authority over the issue of convenience and necessity. Here, by reason of the interstate character of the transportation involved, the commission has no power over that issue, but is confined to the subjects of condition and use of the highways. * * * " (Citing cases.)

In Ex parte Truelock, 139 Tex.Cr.R. 365, 140 S.W.2d 167, 168, the Court of Criminal Appeals held:

"The power of Congress to regulate interstate commerce is supreme, and whenever any statute of a state is in conflict with the enactments of Congress, or whenever it seriously hampers the movement of interstate commerce even over the state public highways, all such state statutes must yield and be superseded by such congressional enactments.

* * * * * *

"We are, however, here confronted with another and further proposition in that the above-quoted phrase 'convenience and necessity' seems to be a misnomer in the event such be held to the restricted meaning above outlined. The statute itself seems to be authority for this statement. It will be seen by a perusal of Secs. 8 and 9 thereof that it is not only the duty of the State Commission to ascertain whether or not such freight or passengers shall move over

the desired routes, but also, in the exercise of the powers granted or inherent in the State, whether or not such traffic would be hazardous or dangerous to the safety of life, limb or property of the public rightfully on said highway, or whether such highway construction would be capable of withstanding the added traffic thereon. * * * The Supreme Court of the United States, in Sproles v. Binford, 286 U.S. 374, 389, 52 S.Ct. 581, 585, 76 L.Ed. 1167, page 1179, in speaking of a like statute to the one here under consideration, held as follows: 'The objection to the prescribed limitation as repugnant to the commerce clause is also without merit. The court, in Morris v. Duby, supra, 274 U.S. (135) at page 143, 47 S.Ct. 548, 550, 71 L.Ed. 966 (967 [971]), answered a similar objection to the limitation of weight by the following statement, which is applicable here: "An examination of the acts of Congress discloses no provision, express or implied, by which there is withheld from the state its ordinary police power to conserve the highways in the interest of the public and to prescribe such reasonable regulations for their use as may be wise to prevent injury and damage to them. In the absence of national legislation especially covering the subject of interstate commerce, the state may rightfully prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens." ' "

In Anderson, Clayton and Company v. State ex rel. Allred, 122 Tex. 530, 62 S.W. 2d 107, 111, it is said: "The foregoing act makes no distinction between intrastate and interstate carriers. All persons who operate or cause to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this state, where in the course of such transportation a highway between two or more incorporated cities, towns, or villages is traversed, must obtain a certificate of public convenience and necessity. The act also provides that a 'contract carrier' transporting property for compensation or hire over any highway in this state other than as a common carrier must obtain a permit from the Railroad Commission. That part of the act which requires vehicles engaged wholly in interstate commerce to obtain a certificate of public convenience and necessity is void."

Then, in Galveston Truck Line Corporation v. Allen, D.C., 2 F.Supp. 488, 489, the following language appears: "While it is true that the cases in which it has been laid down that a state commission might not, upon considerations of public convenience and necessity, refuse a permit to persons for the operation of trucks engaged wholly in interstate commerce, had to do with commerce coming into and out of the state, that is, movements actually crossing state lines, no difference in principle can, we think, be drawn between a link in interstate commerce which operates wholly within a state, and one which crosses the state line. Since, therefore, the refusal by the commission to issue a permit is based, not upon considerations of traffic safety, or of the protection of the highways from injury to them, or from congestion thereof, but only of the commerce itself and the business of those who transport it, that is, of whether there is already adequate provision for handling such commerce and the effect upon those engaged in it which the granting of the permit will have, the ruling necessarily operates as a burden on interstate commerce and may not stand."

The Supreme Court of the United States in Eichholz v. Public Service Commission of Missouri, 1939, 306 U.S. 268, 622, 59 S.Ct. 532, 534, 83 L.Ed. 641, held that:

"Second.—When the Commission revoked the permit, the Interstate Commerce Commission had not acted upon appellant's application under the Federal Motor Carrier Act [49 U.S.C.A. § 301 et seq.] and meanwhile the authority of the state body to take appropriate action under the state law to enforce reasonable regulations of traffic upon the state highways had not been superseded. * * *" and

"Third: Appellant did not seek from the state commission a certificate entitling

him to do an intrastate business. Under the Commission's rule, he had his choice either to refrain from carrying property between points in Missouri or to secure a certificate of public convenience and necessity as an intrastate carrier. The validity of the requirement of such a certificate to promote the proper and safe use of the state highways is not open to question. * * *

* * * * * *

" * * * If appellant's hauling of the merchandise in question across the state line was not in good faith but was a mere subterfuge to evade the State's requirement as to intrastate commerce, there is no ground for saying that the prohibition of the use of the interstate permit to cover such transactions, and the application of the Commission's rule prohibiting them in the absence of an intrastate certificate, was an unwarrantable intrusion into the federal field or the subjection of interstate commerce to any unlawful restraint. And if the prohibition of such transactions was valid, the Commission was undoubtedly entitled to enforce it by revoking appellant's permit for breach of the condition upon which it was issued and accepted by appellant."

In the Eichholz case we note that Eichholz had no interstate certificate issued by the Interstate Commerce Commission. He had applied for a certificate but the application was still before the Interstate Commerce Commission and had not been acted upon. Prior to the time the Congress invaded the field of interstate commerce by the enactment of the National Motor Carrier Act, Eichholz had obtained an interstate certificate from the Missouri Commission, but under that certificate he was carrying on an intrastate business. The Missouri Public Service Commission cancelled the certificate because Eichholz was carrying on an intrastate business, and the Missouri Commission had not given him any such authority.

We believe that the appellant having secured from the Interstate Commerce Commission a certificate of public convenience and necessity, such as he has, and having secured the certificate of use from the Railroad Commission, it does not have the authority to cancel such permit on a showing that appellant had violated the Penal Statutes.

Our statutes provide penalties for those transporting intrastate commerce without authority from the commission.

Penal Code, Article 1690b, Vernon's Ann.P.C. art. 1690b, reads as follows:

"Motor carriers, violation of orders, penalties

"(a) Every officer, agent, servant or employee of any corporation and every other person who violates or fails to comply with or procures, aids or abets in the violation of any provision of this Act or who violates or fails to obey, observe or comply with any lawful order, decision, rule or regulation, direction, demand, or requirement of the Commission shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than Twenty-five Dollars ($25.00), nor more than Two Hundred Dollars ($200.00), and the violations occurring on each day shall each constitute a separate offense.

"(b) Every officer, agent, servant or employee of any corporation and every other person who violates or fails to comply with or procures, aids or abets in the violation of any provision of this Act or who violates or fails to obey, observe or comply with any lawful order, decision, rule or regulation, direction, demand or requirement of the Commission shall in addition be subject to and shall pay a penalty not exceeding One Hundred Dollars ($100.00), for each and every day of such violation. Such penalty shall be recovered in any Court of competent jurisdiction in the county in which the violation occurs. Suit for such penalty or penalties shall be instituted and conducted by the Attorney General of the State of Texas, or by the County or District Attorney in the county in which the violation occurs, in the name of the State of Texas.

"(c) Upon the violation of any provision of this Act, or upon the violation of any rule, regulation, order or decree of the Commission promulgated under the terms of this Act, any District Court of any

county where such violation occurs shall have the power to restrain and enjoin the person, firm or corporation so offending from further violating the provisions of this Act or from further violating any of the rules, regulations, orders and decrees of the Commission. Such injunctive relief may be granted upon the application of the Commission, the Attorney General or any District or County Attorney. No bond shall be required when such injunctive relief is sought upon the application of the Commission, Attorney General or any District or County Attorney. Such relief may be granted in suits for penalties as provided in subdivision (b) of this Section, but a suit for penalty shall not be a condition precedent to the injunctive relief provided by this subdivision.

"(d) Any authorized inspector for the Commission shall have the power and authority to make arrests for any violations of this Act and it shall be the duty of all judges, prosecuting attorneys and peace officers of the counties and municipalities of this State to assist in the enforcement of this Act."

As is noted in the Article set out herein, adequate remedies are provided for the punishment of its violators by fines and penalties, and by injunction; the commission is limited to the provisions of the law and cannot cancel appellant's Road Right because of his criminal acts, there being no relation between such acts and safe travel on the highways.

The judgment of the trial court is reversed and judgment here rendered that the order cancelling appellant's certificate was not authorized, and it follows that appellant is entitled to the relief sought.

Reversed and rendered.

On Appellees' Motion for Rehearing.

PER CURIAM.

Appellees say in their motion for rehearing that since appellant "was violating the terms of his certificate by unauthorized hauling of intrastate commerce, the Commission had a choice of at least two remedies: To proceed under the provisions of art. 911–b, Sec. 12–b, V.A.C.S., by cancelling appellant's certificate; or by filing criminal charges [1] * * *."

Cited in support of this statement is our recent decision in Stotts v. Railroad Commission of Texas, 236 S.W.2d 210, and regarding it they say:

"* * * Actually, the power exercised by the Commission in the Stott's case is no different from the power which it exercised in the Querner case. In each case, the certificate was cancelled because the certificate holder violated the terms and conditions of the certificate.

"To say that the Commission has the power to cancel Stott's certificate, an intrastate carrier, and deny the Commission the power to cancel the Querner certificate, an interstate carrier, is in effect to give precedence to interstate carriers over intrastate carriers, resulting in discrimination against intrastate certificate holders."

With respect to the Commission's rights under Sec. 12b, supra, we note that this Section authorizes the Commission to "* * * revoke, suspend or amend any *certificate* or *permit* issued under the provisions of this Act." [2]

A certificate is defined in Sec. (e) of art. 911b, supra, as follows: "The term 'certificate' means certificate of public convenience and necessity issued under this Act", and in Sub. (f) thereof it is said: "The term 'permit' means the permit issued to contract carriers under the terms of this Act."

Appellee had neither a "permit" nor a "certificate" as above defined and we fail to see how Section 12b, supra, could be utilized by the Commission in this instance or how our opinion in the Stotts case is inconsistent with our decision here, since Stotts held a certificate of convenience and necessity issued by the Commission.

The certificate held by appellant is labeled "Interstate." The parties here refer to it as a "road right certificate" and a

1. The right to file criminal charges is not involved in this case.

2. Italics ours.

federal sitting in Texas court has called it a "police certificate." Gulf Coast Motor Freight Lines v. United States, D. C., 35 F.Supp. 136 [3].

We have found no statute expressly authorizing the Commission to issue this character of certificate; nor has any Rule of the Commission to this effect been cited. We, therefore, do not find and do not expect to find any statute or any rule authorizing the Commission to cancel such a certificate.

Further adding to this negative reasoning we do not find any statute or any rule authorizing the Commission to cancel a certificate of this character on the ground asserted here.

The certificate itself does not provide that it may be cancelled on this ground,[4] the only provisions therein concerning revocation are:

"In the event the Interstate Commerce Commission shall hereafter revoke or restrict the authority heretofore granted by it to applicant, then the authority herein granted to use a portion of the highways in the State of Texas shall become Null and Void, or Restricted, in accordance with any such order of the Interstate Commerce Commission.

"This Certificate or Permit to remain in effect from and after the date hereof, subject to the provisions, limitations, and restrictions of Chapter 314, Acts Regular Session of the Forty-first Legislature, 1929, and all amendments thereto, as well as the rules, regulations, and decisions of the courts, and the rules and regulations of the Railroad Commission of Texas, heretofore prescribed, or which may be hereafter prescribed under and pursuant to the authority conferred upon it by law."

We wish to make our holding clear. It is that in the absence of an appropriate statute, Commission Rule or properly conditioned certificate, the Commission cannot cancel appellants' road right certificate on the ground that he unlawfully engaged in intrastate commerce. No other ruling is made.

The motion is overruled.

Overruled.

3. After passage of the Federal Motor Carrier Act, 49 U.S.C.A. §§ 301–327, the rights of a state to regulate this type of carrier in interstate commerce were limited to measures taken to protect highways and the public safety and to exact reasonable compensation for the use of the highways. Southwestern Greyhound Lines v. Railroad Commission of Texas, 128 Tex. 560, 99 S.W.2d 263, 109 A.L.R.

1235; South Carolina State Highway Dept. v. Barnwell Bros., 303 U.S. 177, 625, 58 S.Ct. 510, 82 L.Ed. 734; Maurer v. Hamilton, 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969.

4. The prohibition against engaging in interstate commerce adds nothing to the mandate of the Penal Statutes cited in original opinion.