## EX PARTE HARRY TRUELOCK.

No. 20783. Delivered April 3, 1940.
Rehearing Denied May 22, 1940.

The opinion states the case.

*George Kirkpatrick* and *James J. Shaw,* both of Houston, and *T. S. Christopher,* of Fort Worth, for appellant.

*Gerald C. Mann,* Attorney General, *Benjamin Woodall,* Assistant Attorney General, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

A complaint was filed in the justice court of Montgomery County against the appellant, Harry Truelock, charging him

with a violation of the provision of Article 911b, Vernon's Texas Civil Statutes 1936, (Acts 1929, Chap. 314, p. 698, as amended by Acts of 1931, Chap. 277, p. 480), the penal provision being shown as Art. 1690b, Vernon's Ann. Criminal Statutes.

The complaint alleges that on or about the 15th day of May, 1939, Harry Truelock was a person controlling and operating, and who caused to be operated, a motor-propelled vehicle for hire over State Highway No. 19, being Federal Highway No. 75; that on said date he was engaged in the transportation by motor vehicle of goods, wares and merchandise, shipped and consigned to Emsco Derrick & Equipment Co., from Houston, Texas, to Bavaird Supply Company, at Salem, Illinois, "without first having obtained from the Railroad Commission of Texas a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity requires such operation, contrary to the statute in such cases made and provided," etc.

Appellant was arrested and brought before the justice court. He applied to the county judge of Montgomery County for a writ of habeas corpus in which he alleged that the act under which he was charged in the justice court was unconstitutional, null and void and repugnant to the Commerce Clause of the Federal Constitution.

From an order of the county judge refusing to release him the case is brought to this court on appeal.

The case has been thoroughly briefed and argued both by appellant's counsel and by the Attorney General of the State. Many questions have been discussed and numerous authorities relied upon. We have carefully studied each and every question presented but believe that as to many of the questions we are not here called upon to decide them in order to make a proper disposition of this case. Neither do we think it proper for us to do so.

The power of Congress to regulate interstate commerce is supreme, and whenever any statute of a state is in conflict with the enactments of Congress, or whenever it seriously hampers the movement of interstate commerce even over the State public highways, all such State statutes must yield and be superseded by such congressional enactments.

It is an equally well recognized proposition that whenever the Legislature or any regulatory body, acting for the State,

passes a law or promulgates a rule which works an unreasonable discrimination against interstate commerce in favor of intrastate commerce that such a statute and such regulations are invalid.

We must know, in the consideration of this case, that these two well recognized propositions will be respected. In a general way and without the necessity at this time of noting exceptions to the rule, the State has power to regulate intrastate commerce, when acting in a field where Congress has not chosen to legislate, so long as there is no injustice or unreasonable discrimination in favor of intrastate commerce as against interstate commerce.

The difficulty in which we herein find ourselves is based on the phrase "a certificate of convenience and necessity," and its obvious meaning as will be found by a full reading of the statutes of this State regulating the use of our State highways. Our statute provides, Art. 911b, Sec. 3, Vernon's 1936 Texas Statutes, that: "No motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certification of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation. No motor carrier shall, after this Act goes into effect, operate as a contract carrier without first having obtained from the Commission a permit so to do, which permit shall not be issued until the applicant shall have in all things complied with the requirements of this Act. (As amended Acts 1931, 42nd. Leg., p. 480, ch. 277, Sec. 3.)"

It is recognized by this court that a certificate embodying the fact that the Railroad Commission of this State has found it convenient and necessary for the moving of freight or passengers in interstate commerce through this State is a necessary preliminary finding before such freight or passengers can lawfully move over such State highways, can not be enforced on account of the fact that such a holding has been found by the United States Supreme Court to be an interference with interstate commerce, and on account of the fact that Congress has seen fit to legislate thereon in the Federal Motor Carrier Act of 1935, Acts 74th Congress, 49 U. S. C. A., Sec. 302. We recognize the fact that our State Commission is powerless to refuse a permit to operate upon this State's highways in the movement of interstate commerce on account of the fact that

such body does not think the convenience and necessity of the public demands such additional operation.

We are, however, here confronted with another and further proposition in that the above quoted phrase "convenience and necessity" seems to be a misnomer in the event such be held to the restricted meaning above outlined. The statute itself seems to be authority for this statement. It will be seen by a perusal of Secs. 8 and 9 thereof that it is not only the duty of the State Commission to ascertain whether or not such freight or passengers shall move over the desired routes, but also, in the exercise of the powers granted or inherent in the State, whether or not such traffic would be hazardous or dangerous to the safety of life, limb or property of the public rightfully on said highway, or whether such highway construction would be capable of withstanding the added traffic thereon. It seems apparent that all three of these propositions enter into what is called a "certificate of convenience and necessity," and when all such have been determined in favor of an application, then, and not until then, it becomes incumbent upon the State Commission to allow the privilege of utilization of public highways over certain pre-designated roads by certain vehicles, ·limited as is therein provided by law. The Supreme Court of the United States in Sproles v. Binford, 286 U. S. 389, 76 L. ed., p. 1179, in speaking of a like statute to the one here under consideration, held as follows: "The objection to the prescribed limitation as repugnant to the commerce clause is also without merit. The court, in Morris v. Duby, supra (274 U. S. 143, 71 L. ed. 971, 47 S. Ct. 548), answered a similar objection to the limitation of weight by the following statement, which is applicable here: 'An examination of the acts of Congress discloses no provision, express or implied, by which there is withheld from the State its ordinary police power to conserve the highways in the interest of the public and to prescribe such reasonable· regulations for their use as may be wise to prevent injury and damage to them. In the absence of national legislation especially covering the subject of interstate commerce, the State may rightfully prescribe uniform regulations adapted to promote safety upon its highways and the conservation of their use, applicable alike to vehicles moving in interstate commerce and those of its own citizens.' In the instant case, there is no discrimination against interstate commerce and the regulations adopted by the State, assuming them to be otherwise valid, fall within the established principle that in matters admitting of diversity of

treatment, according to the special requirements of local conditions, the States may act within their respective jurisdictions until Congress sees fit to act. Minnesota Rate Cases (Simpson v. Shepard) 230 U. S. 352, 399, 400, 57 L. ed. 1511, 1541, 1542, 48 L. R. A. (N. S.) 1151, 33 S. Ct. 729, Ann. Cas. 1916A, 18."

Although the Sproles case, supra, was decided in 1932 prior to the enactment of the Federal Motor Carrier Act, supra, nevertheless the said Federal Act did not attempt to take away from the State any of the above announced powers. In fact we find that the same Supreme Court later said in the year 1939, in the case of McDonald v. Thompson, 305 U. S. 263, 83 L. ed. 165, in an opinion by the late Justice Butler, in discussing what was meant by the proviso "bona fide operation" in the Federal Motor Carrier Act, that same "suggests absence of evasion, excludes the idea that mere ability to serve as a common carrier is enough, includes actual rather than potential or simulated service, and in context implies recognition of the power of the State to withhold or condition the use of its highways in the business of transportation for hire. Plainly the proviso does not extend to one operating as a common carrier on public highways of a State in defiance of its laws."

We also find in the case of Continenal Baking Co. v. Woodring, 286 U. S. 352, 76 L. ed. 1155, 81 A. L. R. 1403, relative to the several states' powers to tax, license and require liability bonds of common carriers using the highways of the State, the following quotation from the case in 81 A. L. R., p. 1410: "Requirements of this sort are clearly within the authority of the State which may demand compensation for the special facilities it has provided and regulate the use of its highways to promote the public safety. Reasonable regulations to that end are valid as to intrastate traffic, and, where there is no discrimination against the interstate commerce which may be affected, do not impose an unconstitutional burden upon that commerce. Motor vehicles may properly be treated as a special class, because their movement over the highways, as this Court has said, 'is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves.' Hendrick v. Maryland, 235 U. S. 610, 622, 59 L. ed. 385, 390, 35 S. Ct. 140; Kane v. New Jersey, 242 U. S. 160, 167, 61 L. ed. 222, 37 S. Ct. 30; Michigan Pub. Utilities Commission v. Duke, 266 U. S. 570, 69 L. ed. 445, 36 A. L. R. 1105, 45 S. Ct. 191, supra; Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 250, 251, 72 L. ed. 551, 554, 48 S. Ct. 230; Sprout

v. South Bend, 277 U. S. 163, 169, 170, 72 L. ed. 833, 836, 62 A. L. R. 45, 48 S. Ct. 502; Hodge Drive-It-Yourself Co. v. Cincinnati, 284 U. S. 335, 337, 76 L. ed. 323, 326, 52 Ct. 144.''

From such quotation we draw the fair conclusion that the Federal Motor Carrier Act does not supersede the State statute in all the matters just above mentioned. We do recognize, however, that the State Commission lacks the power to determine whether there be either a convenience or necessity for further facilities in the movement of interstate commerce when taken in its restricted sense. That there is a misnomer contained in the phrase "convenience and necessity," and that such is not constricted to the mere meaning of whether or not it is convenient or necessary that additional facilities be provided for the movement of freight, we think, is evidenced by the following excerpt from the State statute, Art. 911b, Sec. 9, as follows: "The Commission shall ascertain and determine if a particular highway or highways designated in an application for a certificate of public convenience and necessity are of such type of construction or in such state of repair, or subject to such use as to permit of the use sought to be made by the applicant, without unreasonable interference with the use of such highways by the general public for highway purposes. And if the Commission shall determine, after hearing, that the service rendered by existing transportation facilities or agencies is reasonably adequate, or that public convenience would not be promoted by granting of said application, and the operation of motor vehicles on the public highways therein designated, or that such highway or highways are not in such state of repair, or are already subject to such use as would not permit of the use sought to be made by the applicant without unreasonable interference with the use of such highways by the general public for highway purposes, then in either or any of such events said application may be denied and said certificate refused, otherwise the application shall be granted and the certificate issued upon such terms and conditions as said Commission may impose and subject to such rules and regulations as it has or may thereafter prescribe."

It is also provided that in forming its conclusions, orders, etc., the State Railroad Commission shall consult with the State Highway Commission on the condition of the highways involved, and the ability of the highways to carry the proposed additional traffic, etc. Sec. 4, Art. 911b.

Section 22b of the above Act, in its declaration of policy, only incidentally mentions the convenience and necessity of

the general public, but is mainly interested in the safety of the public and permanency of the highways. We quote same: "Declaration of Policy. The business of operating as a motor carrier of property for hire along the highways of this State is declared to be a business affected with the public interest. The rapid increase of motor carrier traffic, and the fact that under existing law many motor trucks are not effectively regulated, have increased the dangers and hazards on public highways and make it imperative that more stringent regulation should be employed, to the end that the highways may be rendered safer for the use of the general public; that the wear of such highways may be reduced; that discrimination in rates charged may be eliminated; that congestion of traffic on the highways may be minimized; that the use of the highways for the transportation of property for hire may be restricted to the extent required by the necessity of the general public, and that the various transportation agencies of the State may be adjusted and correlated so that public highways may serve the best interest of the general public. (As added Acts 1931, 42nd. Leg., p. 480, ch. 277, sec. 21.)"

Prior to the passage of the Federal Motor Carrier Act, the Supreme Court of the United States held in the case of Stephenson v. Binford, 287 U. S. 251, 53 S. Ct. 181, 77 L. ed. 288, 87 A. L. R. 721, that: "It is well established law that the highways of the state are public property; that their primary and preferred use is for private purposes, and that their use for purposes of gain is special and extraordinary, which, generally at least, the legislature may prohibit or condition as it sees fit." Packard v. Banton, 264 U. S. 140, 68 L. ed. 596, and many other cases there cited.

We quote from Ex parte Sterling, 122 Tex. 108, 53 S. W. (2d) 294, in which the State Supreme Court held the following: "The lawmaking body of this state may, if it considers it in the public interest, withhold altogether the use of public highways from the operation of trucks carrying freight for hire. The power to prohibit the use of the highways for such purposes necessarily includes the lesser power to place such restrictions and regulations upon the use thereof as may be deemed proper, even though the burdens imposed may be of such a nature as to prevent any profitable operation upon the part of those desiring to pursue such business."

If we give the phrase "convenience and necessity," as used in this complaint, its unrestricted meaning, that is, not only

the need for more freight or passenger transportation, but also the public safety feature, as well as the condition of the highways, not only as to construction and facilities, but also as to ability to accommodate such additional traffic,—then it should be plain that such matters, excluding convenience and necessity, are a necessary and a committed function within the power and province of the State authority.

Nor have our State courts been recreant in their holdings relative to the provisions of this statute. In Railroad Commission v. Southwestern Greyhound Lines, 92 S. W. (2d) 296, Justice Baugh said: "On the other hand, in the field of motor carrier operation over the highways, the roadbed used is one owned, built, and maintained by the state from taxes exacted from its citizens. It was not constructed for the purpose of enabling individuals or corporations to conduct a business thereon for hire, either interstate or intrastate, for their own profit, but for the use and benefit of the public. No individual or corporation has any such interest in, or rights thereon, as entitle him to conduct a business for hire over such roads. Such use of the highways for such purpose is therefore only permissive, subject to regulation when granted, and may be denied or withdrawn, whenever it becomes destructive of the state's property, or dangerous to the safety of the public in its use of the highways in the manner and for the purpose for which such highways were constructed and are maintained by the state.

"Under these facts and circumstances, and the inherent differences of the subject-matter of regulation, there should be, and as we interpret the recent decisions of the Supreme Court of the United States, there has been a clear differentiation between the authority of the state to regulate the use of its highways, even though such regulation interferes with interstate commerce carried over same, and the right of the state to interfere with such commerce carried over the railroads. The old rate cases, and other decisions of the United States Supreme Court bearing upon state legislation and regulations affecting interstate commerce over the railroads are not, therefore, applicable to all phases of such commerce carried, by permission only, and not as a matter of right, over the state highways, which are the property of the state and not the property of the carriers. The necessity for such differentiation is, we think, manifest."

Again he quotes from the United States Supreme Court opinion by Justice Brandeis in the case of Bradley v. Utilities,

decided in 1933, as follows: "But the Supreme Court, the same Justice writing, eight years later in the case of Bradley v. Public Utilities Com., 289 U. S. 92, 93, 53 S. Ct. 577, 578, 77 L. ed. 1053, 85 A. L. R. 1131, wherein the Public Utilities Commission of the state of Ohio had refused Bradley a permit to operate over a state highway interstate to Flint, Mich., on the ground that the 'proposed service would create and maintain an excessive and undue hazard to the safety and security of the traveling public, and the property upon such highway,' upheld the power of the state to do so, and held: 'The state may exclude from the public highways vehicles engaged exclusively in interstate commerce, if of a size deemed dangerous to the public safety, Morris v. Duby, 274 U. S. 135, 144, 47 S. Ct. 548, 71 L. Ed. 966 (971); Sproles v. Binford, 286 U. S. 374, 389, 390, 52 S. Ct. 581, 76 L. Ed. 1167, 1180. Safety may require that no additional vehicle be admitted to the highway. The Commerce Clause is not violated by denial of the certificate to the appellant, if upon adequate evidence denial is deemed necessary to promote the public safety. Compare Hammon v. Schappi Bus Line, 275 U. S. 164, 170, 171, 48 S. Ct. 66, 72 L. Ed. 218, (220, 221)."

It was also held in the Bradley case, supra, that the State may require from interstate carriers the registration of the vehicle and an operator's license; the appointment of an agent upon whom process may be served; may require the filing of contracts providing adequate insurance for payment of judgments recovered for injuries, etc.

While this Southwestern Greyhound Lines case, supra, was reversed by the Supreme Court of this State, such reversal was predicated on other grounds than the one upon which it is herein used as authority. In said case Justice Baugh epitomizes what seems to our mind to be the logical conclusion in this matter as follows: "As above indicated, the Railroad Commission is without power to determine the need or convenience for interstate commerce. This is manifest for the reason that the need and convenience of the people of other states than Texas is involved in the determination of this question, a matter over which the Railroad Commission has no jurisdiction. But an examination of the State law discloses that these are not the only questions which the Railroad Commission must determine in granting or refusing such certificate. The term 'certificate of public convenience and necessity' should not, we think, be given such a restricted meaning. It is but a license or permit, granting a privilege to the applicant to use the highways for the

purposes proposed. It is but evidence of the State's permission to the applicant to so use its highways. As a prerequisite to the granting of such permission, the statutes impose upon the commission the duty to determine not only (Vernon's Ann. Civ. St. art. 911a, Sec. 6, and article 911b, Sec. 8) 'the demand for, or need of additional service, if there exists a public necessity for such service,' but to determine also, even if such public need and convenience exist (Vernon's Ann. Civ. St. art. 911a, Sec. 7, and article 911b, Sec. 9), whether the highways over which commerce is sought to be carried, 'are of such type of construction or in such state of repair, or subject to such use as to permit of the use sought to be made by the applicant.' And if the commission find that 'such highway or highways are not in such state of repair, or are already subject to such use as would not permit of the use sought to be made by the applicant without unreasonable interference with the use of such highway or highways by the general public for highway purposes, then in either or any such event such application may be denied and said certificate refused."

In the case of Railroad Commission v. Fisher, 127 S. W. (2d) 925, the Court of Civil Appeals at Waco, through Justice Alexander, refused an injunction to Fisher prohibiting the Commission from interfering with his interstate traffic by motor vehicles over the highways of this State, because: "Since appellee does not have a certificate of convenience and necessity from either the Interstate Commerce Commission or the Railroad Commission of Texas and was not engaged in the bona fide operation as such carrier prior to 1935, he does not now have a right to use the Texas highways for the transportation of freight for hire. Consequently, he is not entitled to an injunction restraining the officers of this state from arresting him and his employees for doing so."

Again that court says in Smith v. Coleman, 127 S. W. (2d) 928, through the late Justice George, that: "The Federal Motor Carrier Act operates to limit such provisions of the Texas Motor Carriers Law as confers upon the Railroad Commission the power to determine whether there exists a public convenience and necessity for the proposed service founded upon the adequacy of the existing transportation facilities, etc., to carriers of property moving intrastate. State ex rel. Board of Com'rs. v. Martin, 210 Iowa 207, 230 N. W. 450; Buck v. Kuykendall, 267 U. S. 307, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Bush & Sons Co. v. Maloy, 267 U. S. 317, 45 S. Ct. 326, 69 L. Ed. 627. But it does not deprive the Railroad Com-

mission of its jurisdiction and power to determine whether the safety of the traveling public and the preservation of the state's property in the highways will permit any additional burdens of commerce upon and over the highways irrespective of whether such burdens result from interstate or intrastate commerce thereon. South Carolina State Highway Department v. Barnwell Bros., Inc., 303 U. S. 177, 58 S. Ct. 510, 82 L. Ed. 734; Id. 303 U. S. 625, 58 S. Ct. 510; Kelly v. State of Washington, 302 U. S. 1, pars. 5, 7 and 9, 58 S. Ct. 87, 82 L. Ed. 3; Thompson v. McDonald, 5 Cir., 95 F. 2d 937; Winton v. Thompson, Tex. Civ. App., 123 S. W. 2d 951."

Our State Supreme Court in 1936, in the case of New Way Lumber Co. v. Smith, 96 S. W. (2d) 282, said: "The highways of the state are public property, and their use for purposes of gain may be regulated or prohibited by the Legislature, as it sees fit. Ex parte Sterling, 122 Tex. 108, 53 S. W. (2d) 294; Robbins et al v. Limestone County et al., 114 Tex. 345, 268 S. W. 915; Shupee v. Railroad Commission, 123 Tex. 521, 73 S. W. (2d) 505; Stephenson v. Binford, 287 U. S. 251, 53 S. Ct. 181, 186, 77 L. Ed. 288, 87 A. L. R. 721. The power of the state to regulate traffic over public highways is well settled. This power includes the right to permit or prohibit motor vehicles, operated for compensation or hire, to use its public highways under such rules and regulations as the Legislature may see fit to prescribe; and the Railroad Commission, or any other tribunal, may be authorized to carry out the details of such rules."

This certificate of convenience and necessity, if granted, operates as a permit to thus use the highways designated therein, and such certificate is in itself a permit, and such words are used interchangeably. See Sections 11, 12, 13 and 13a of Art. 911b, supra. If this be granted, then there is naught shown in this statement of facts that relator has ever applied for either a certificate or a permit of any kind to either the State Commission or the Interstate Commerce Commission. Instead we may reason, in the absence of such showing, that he is running in open defiance of any and all regulatory matters relative to traffic on the highway, and without having applied to the proper State authorities for a certificate (or permit) that would authorize him to operate over the State roads legally as a common carrier.

It is also observed, however, that in consonance with the above quoted holdings, in the event of such an application to

be made by him to the State authority, they should not take into consideration the convenience and necessity of the proper movement of freight or passengers in matters of interstate commerce, but they do have the right to exercise their police power in safe-guarding the safety of the public, as well as the capacity of and conservation of the State highways, even though the application be one relating to interstate commerce.

The facts failing to show that relator has been refused a permit (or certificate) which could have been denied on anyone of at least two further grounds than the necessity for the movement of freight in interstate commerce, and the further fact that such phrase "convenience and necessity" also means "permit," we are constrained to the belief that relator stands properly charged herein.

We do not think that because he is engaged in the movement of interstate commerce he can be allowed to operate over these State highways with an excessive load, nor a greater width, nor a greater height nor length, nor at a greater speed than is permitted by our State laws, nor over State highways of an insufficient capacity. It is necessary, so we think, when engaging in interstate commerce, that he should submit himself to the proper authorities for a permit to operate over such highways, and be considered by them, as provided by the State statute, with the exception of their power of determining the need for additional freight or passenger transportation, which latter need is still a part of their powers of consideration only in intrastate movements.

The judgment is affirmed.

### ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant insists that we were in error in holding that a "permit" to use the highways and a "certificate of convenience and necessity" relative to the use of the highways are convertible terms under our statute.

It will be noted that in Sec. 11, Art. 911-b, Vernon's Tex. Civil Statutes, 1936, when speaking of the "certificate of convenience and necessity," used the phrase in conjunction with a "permit" as follows: "Upon the filing of said application for a certificate or permit the Commission shall fix a time and place for hearing," etc.

Again in Section 12 of Art. 911-b we find the following: "The hearing on an application for a certificate or permit shall be conducted under such rules and regulations as the Commission may prescribe * * * The Commission at any time after hearing had, upon notice to the holder of any certificate or permit, and after opportunity given such holder to be heard, may by its order revoke, suspend or amend any certificate or permit issued under the provisions of this Act, where in such hearing the Commission shall find that such certificate or permit holder has discontinued operation or has violated, refused or neglected to observe the Commission's lawful orders * * * provided, that the holder of such certificate or permit shall have the right of appeal * * *"

Again in Section 13 of such statute we find: "Before any permit or certificate of public convenience and necessity may be issued to any motor carrier and before any motor carrier may lawfully operate under such permit or certificate as the case may be, such motor carrier shall file with the Commission bonds * * *"

Again in Section 13a of such statute we find: "The Commission is vested with power and authority, and it is hereby made its duty, to approve or disapprove the nature and character of the equipment to be used under any permit or certificate and the amount and character of tonnage which may be hauled thereunder on any motor vehicle, trailer or semitrailer used under such permit or certificate and in approving the amount and character of tonnage to be hauled on any such vehicles, trailers or semitrailers under any permit or certificate * * *"

It appears from the foregoing quotations from our statute that the word "permit" is always used in conjunction with and interchangeably for the phrase, "certificate of convenience and necessity," intending to describe and describing the same thing relative to a permit to use State highways for certain purposes. It will be noticed that at no time does the statute say either a permit or a certificate of convenience and necessity, but it consistently uses the word "permit" or the phrase "certificate of convenience and necessity," thus evidencing the fact that two instruments are not intended to be referred to, but only one instrument, characterized by two alternative names, both meaning the same thing.

The question involved was given our best attention on original submission. Believing the correct disposition was thus made of the appeal, the motion for rehearing is overruled.