

# THE ATTORNEY GENERAL
# OF TEXAS

Gerald C. Mann      AUSTIN 11, TEXAS

~~XXXXXXXXXXXXXXXXX~~
~~WILL WILSON~~
ATTORNEY GENERAL

*9116, 5a(6), 666 (1942)*

Hon. James E. Kilday
Director
Motor Transportation
Division
Railroad Commission of
Texas
Austin, Texas

Opinion No. O-4853
Re: Whether the Railroad Commis-
sion may grant authority to use
highways of the State of Texas as
a common carrier in interstate com-
merce to a person who has been
issued a certificate of convenience
and necessity by the Interstate
Commerce Commission authorizing
such operation when such person
holds an intrastate specialized
motor carrier certificate or an
intrastate contract carrier permit

Dear Sir:
under Article 911b, R.C.S.

      We are in receipt of your letter of October 26, 1942,
in which you state in part:

    "There has been presented to us, by an application
duly filed, the question of whether sections 5a(b) and
6bb of Article 911b, Vernon's Revised Texas Civil Stat-
utes, prohibiting dual operation as common carrier motor
carrier and specialized motor carrier or contract carrier
apply to an application to us for authority to use high-
ways of the State of Texas in transporting interstate com-
merce in accordance with authority granted the applicant
by the Interstate Commerce Commissioner under Part II of
the Interstate Commerce Act, as amended, or whether in
passing upon such application we may consider only the
ability of the applicant to meet police requirements for
the protection of the public on the highways and whether
the roads are of such type of construction and in such
state of repair and are subject to such use that the ap-
plicant may use them without interfering with use of such
roads by the general public for highway purposes.

    "The applicant before us holds an intrastate spe-
cialized motor carrier certificate and an intrastate con-
tract carrier permit issued by us, and has recently been
issued a certificate of convenience and necessity by the
Interstate Commerce Commission authorizing transportation
of general commodities as a common carrier in interstate
commerce over roads within a prescribed area in Texas.

   o  o  o

"...

"In light of the above, we submit this question to you:  May we grant authority to use highways of the State of Texas as a common carrier in interstate commerce to a person who has been issued a certificate of·convenience and necessity by the Interstate Commerce Commission authorizing such operation when such person holds an intrastate specialized motor carrier certificate or an intrastate contract carrier permit under Article 911b?"

As this department construes Article 911b, Vernon's Annotated Civil Statutes of Texas, being House Bill No. 335, Chapter 277, page 480, Acts, 42nd Legislature, in opinion No. 0-1518, a carrier may not operate both as a common carrier and a specialized motor carrier or a contract carrier.  The question here presented is whether a like prohibition obtains where the applicant has a contract carrier permit and a specialized motor carrier permit for intrastate commerce and subsequently obtains from the Interstate Commerce Commission a common carrier certificate.

As a prerequisite to engaging in interstate commerce a state may not require of a carrier that he obtain from the state a certificate based upon the public need and the usefulness of his proposed business but can make the granting of its authorization contingent only upon consideration of safety of traffic and of the highways and compensation for the use of its roads.  Buck v. Kuykendall, 267 U.S. 307.  And where a carrier has secured an interstate commerce certificate to operate wholly in interstate commerce the State Commission is required to grant such carrier a certificate upon proper application and proof that he will not endanger the State's highways and the traveling public.  Galveston Truck Line Corporation v. Allen, 2 F.Supp. 488, affirmed by memorandum opinion in 289 U.S. 708; Ex Parte Truelock, 140 S.W. (2d) 167.

The State cannot regulate the capacity in which a carrier serves.  If the refusal by the Commission to issue a certificate or permit is based, not upon consideration of the traffic safety or protection to the highways, "but only on the commerce itself and the business of those who transport it", refusal is unwarranted and the carrier may have an injunction against being interfered with in carrying interstate commerce. Galveston Truck Line Corporation v. Allen, supra.  In Thompson v. McDonald, (1928; C.C.A. 5th) 95 F.(2d) 937, affirmed in 305 U.S. 263, rehearing denied, 305 U.S. 676, we find the same thought expressed in these words:

"The Interstate Commerce Commission has jurisdiction over the commercial considerations appertaining to

the interstate trucking business, but the preservation and safety of the roads themselves has been left to the state commission."

And in Texport Carrier Corporation v. Smith, 8 F. Supp. 28, 32, the court used this terminology:

"It is only when the Commission has undertaken to exercise control, not over the safety of the highways and of the traveling public, but over the commerce itself that its orders refusing permits to interstate carriers are inoperative."

The refusal to grant a permit to an interstate commerce carrier on the grounds that he had an intrastate contract carrier's permit would be a refusal based not upon consideration of safety of the highways but upon opposition to the carrier's relation with the shipper, to his method of obtaining compensation. This would be unjustifiable obstruction of interstate commerce.

The U. S. Supreme Court held the Michigan Act unconstitutional that declared that all carriers for hire on its highways should be common carriers; such statute constituted a burden on interstate commerce, where it sought to compel a contract carrier to act as a common carrier. Michigan Public Utilities Commission v. Duke, 266 U.S. 570. We believe that the doctrine of this case is broad enough to declare the unconstitutionality of any attempt by a state to prohibit interstate commerce on the grounds of the status of the carrier, whether common, contract or specialized motor carrier.

The language of the Texas statute is sufficiently broad to warrant an interpretation that the Railroad Commission might refuse a permit under the conditions here under consideration. However, the general rule of constitutional construction ought to be applied, viz.:

"Where a statute is fairly susceptible of two interpretations, one rendering it constitutional and one not, that construction will ordinarily be adopted which will uphold its constitutionality. The presumption is that the legislature intended to keep within the limits of both the Federal and State Constitutions, and to restrict the operation of its enactments to cases where they will have effect consistently therewith." Haselton v. Interstate State Lines, ____ N.H. ____, 133 At. 451, 47 A.L.R. 218; Grenada County v. Brogden, 112 U.S. 261.

This principle of construction has been applied to state statutes governing the operation of motor vehicles whose

Hon. James E. Kilday, page 4    (O-4853)


terms were sufficiently general to include interstate as well
as intrastate carriers.   Commonwealth v. O'Neil, 233 Mass.
535, 124 N.E. 482; Haselton v. Interstate Stage Lines, supra.

     In construing our Article 911b, R.C.S., the Texas
courts have limited its application to intrastate commerce.
The Texas Supreme Court in Southwestern Greyhound Lines v.
Railroad Commission, 128 Tex. 560, 99 S.W. (2d) 263, 109 A.L.R.
1124, said:

> "An analysis of the act merely shows that it was the
> purpose of Congress, in enacting this law, to delegate
> to the Interstate Commerce Commission the exclusive au-
> thority to pass upon the application of a motor carrier
> engaged exclusively in interstate commerce on the high-
> ways for a certificate of public convenience and neces-
> sity.  Such construction of the law does not deprive the
> state from protecting its highways and the public safety
> by reasonable and uniform regulations, and exacting rea-
> sonable compensation for the use of such highways. . . .
> Congress having assumed jurisdiction over this class of
> legislation, such control is exclusive, and such act of
> Congress superseded state legislation."

     In Smith v. Coleman, 127 S.W. (2d) 928, 932, the
Court of Civil Appeals at Waco said:

> "The Federal Motor Carrier Act operates to limit
> such provisions of the Texas Motor Carriers Law as con-
> fers upon the Railroad Commission the power to determine
> whether there exists a public convenience and necessity
> for the proposed service founded upon the adequacy of
> the existing transportation facilities, etc., to carriers
> of property moving intrastate.  State ex rel. Board of
> Com'rs v. Martin, 210 Iowa 207, 230 N.W. 540; Buck v.
> Kuykendall, 267 U.S. 307, 45 S.Ct. 324, 69 L.Ed. 623, 38
> A.L.R. 286; Bush & Sons Co. v. Maloy, 267 U.S. 317, 45
> S.Ct. 326, 69 L.Ed. 627.  But it does not deprive the
> Railroad Commission of its jurisdiction and power to de-
> termine whether the safety of the traveling public and
> the preservation of the state's property in the highways
> will permit any additional burdens of commerce upon and
> over the highways irrespective of whether such burdens
> result from interstate or intrastate commerce thereon.
> South Carolina State Highway Department v. Barnwell Bros.,
> Inc., 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734; Id. 303
> U.S. 625, 58 S.Ct. 510; Kelly v. State of Washington,
> 302 U.S. 1, pars. 5, 7 and 9, 58 S.Ct. 87, 82 L.Ed. 3;
> Thompson v. McDinald, 5 Cir., 95 F.2d 937; Winton v. Thom-
> son, Tex.Civ.App., 123 S.W.2d 951. . . ."

The Texas Court of Criminal Appeals expressed the same view in Ex Parte Truelock, 140 S.W. (2d) 167.

We conclude, therefore, that the fact that a carrier holds an intrastate specialized motor carrier's certificate or an intrastate contract carrier's permit, does not warrant the Railroad Commission in refusing an authorization to a carrier to use the state highways in interstate commerce where he has obtained an Interstate Commerce Commission's certificate authorizing such operation.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ David W. Heath
David W. Heath, Assistant

APPROVED NOV 18, 1942
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:       BWB, CHAIRMAN

DWH:AMM:wb