## ALL AMERICAN BUS LINES, Inc., et al. v. HAWKINS.

### No. 2514.

Court of Civil Appeals of Texas. Eastland.

June 29, 1945.

Rehearing Denied July 20, 1945.

Grover Sellers, Atty. Gen., and S. Austin Wier, of Dallas, for appellants.

L. D. Hawkins, of Breckenridge, for appellee.

LESLIE, Chief Justice.

Plaintiff, L. D. Hawkins, for himself and citizens similarly situated, instituted this suit against the All American Bus Lines, Inc., seeking from the trial court (District Court of Stephens County) a mandatory injunction requiring said Bus Lines to transport him and others from station to station in Texas upon their payment of the required transportation charges. The Railroad Commission of Texas intervened, asserting that such right of intrastate transportation of passengers must be obtained first from that body and that the District Court of Stephens County was without authority or jurisdiction to grant the relief sought by plaintiffs. Upon a trial the relief sought was granted and the Railroad Commission, as well as the Bus Lines, Inc., appeal, challenging the authority of the District Court of Stephens County to grant any such relief.

Appellee Hawkins et al. seek to uphold judgment of the trial court on the theory that the authority to control and regulate such transportation of passengers, as attempted to be vested by the statute in the Railroad Commission of Texas and as attempted to be exercised by that agency, amounts to an unlawful discrimination by the Bus Company against intrastate passengers (himself and others), and, therefore, constitutes a·violation of the Bill of Rights, wherein that instrument provides: "All free men, when they form a social compact, have equal rights." That any such regulation by which the plaintiffs were and are to be rejected as such passengers is void. Further, that the provision of the Bill of Rights that "Monopolies are contrary to the genius of a free government, and shall never be allowed," inhibits such enforced discrimination by the Bus Lines against him and others applying for intrastate transportation, as reflected by the facts in the instant case.

By a third counter point appellee asserts that since the Bus Lines, Inc., is already lawfully operating as a common carrier of interstate passengers over the Texas highways and no statute specifically confers on the Commission any power to determine who may and who may not ride on buses of said carrier, any order out of the Commission purporting to allocate local passenger traffic on the highways of Texas to the exclusion of the Defendant Bus Lines would be null and void, and "it is immaterial that the intervener has not granted defendant a certificate to transport passengers" (intrastate.)

By appellee's fourth counter point he asserts "The District Courts of Travis County, Texas, do not have exclusive original jurisdiction of this cause."

In brief, appellee Hawkins states in his brief the theory of this litigation in this language: "This case proceeds, of course, upon the theory that the plaintiff could ignore the Railroad Commission of Texas."

We have carefully read appellee's excellent brief, the authorities cited and considered the interesting theories advanced for the affirmance of the judgment. After due consideration of the same, we do not believe that the propositions urged by appellees have escaped consideration or been passed unnoticed in the legislative enactments establishing the Railroad Commission and fixing its authority to regulate and

control intrastate transportation of passengers, etc. Evidently the Railroad Commission and the authority bestowed upon it in such matters have been established and approved in the light of such fundamental constitutional and statutory rules, as evidenced by the decisions, State and Federal. Hence, with due regard to appellee's contentions, and in the light of the facts presented by this case, we are of the view that the rights of the litigants herein should be determined under the rules of law and authorities presented to be cited and discussed. To that end a fuller and more specific statement of the nature and results of this litigation follows.

Appellant Bus Lines is lawfully operating its lines of transportation from New York City to Los Angeles, California, as a public carrier of passengers pursuant to authority granted it by the Interstate Commerce Commission of the United States.

Said Bus Lines does an intrastate passenger business and an interstate passenger business in and through certain states along its route other than the State of Texas. In Texas it conducts strictly an interstate transportation business, since it has no permit or certificate of convenience and necessity to carry intrastate passengers in Texas.

Appellant's busses enter Texas from Oklahoma at a point near Gainesville, and its route proceeds through Dallas, Fort Worth, Breckenridge (plaintiff's home town), Abilene, Midland and El Paso, leaving the State of·Texas west of El Paso and entering New Mexico near the town of Anthony.

In 1942 the Railroad Commission of Texas refused to grant said Bus Lines a permit to carry intrastate passengers and no appeal was prosecuted therefrom.

In 1944 said Bus Lines filed application with the Railroad Commission for a permit of convenience and necessity to engage in intrastate passenger business and said application is still pending before that body, which is engaged in taking a volumn of evidence pertaining thereto, and the Commission has not made any final order on the same.

The agreement further stipulates that the appellant Bus Lines did not have any permit to carry intrastate passengers, and that it does not do so for that reason.

In its brief the appellant (American Bus Lines) states:

"This appellant recognizes the authority of the Railroad Commission of Texas to receive and consider, and to deny or allow, an application for a certificate to transact intrastate passenger transportation by All American Bus Lines, Inc. within the state of Texas.

"The single point in this case is whether or not the Railroad Commission of Texas has statutory authority to allow or prevent the transportation of intrastate passengers for hire by All American Bus Lines, Inc. over the highways of this state along the route of Appellant's present, and admittedly, lawful interstate operation.

"This appellant takes the position that the Railroad Commission of Texas has such authority, given by statute; and from the order of the District Court (of Stephens County) in this case directing this appellant to transport for hire in intrastate movement, the plaintiff below and others similarly situated, All American Bus Lines, Inc. makes this appeal."

By the following single point the Bus Lines attacks said judgment: "The District Court of Stephens County has no authority to issue a writ of mandamus requiring All American Bus Lines, Inc. to accept for transportation and to transport the Plaintiff, L. D. Hawkins, and all persons similarly situated, as passengers in intrastate transportation within the State of Texas, upon their request and the payment of proper fare, because the authority to make such an order is placed exclusively in the Railroad Commission of Texas by that statutory enactment of the Legislature known as Article 911a of the Revised Civil Statutes of Texas."

By five points the Railroad Commission in substance makes the same contention. The first four are presented together. In brief, the Commission asserts that the trial court in granting such relief to appellee has commanded the Bus Lines, which have no certificate of convenience and necessity authorizing it to transport intrastate passengers, to violate well understood provisions of the civil and criminal statutes of this State. The Commission says: "The controlling question therefore is, can a district court (in Stephens County) by a mandatory injunction require All American Bus Lines to violate the statutory laws of this state?" That the granting of authority to conduct an intrastate passenger business or render such service is lodged

exclusively by statute in the Railroad Commission for original jurisdiction and in the District Court of Travis County for appellate jurisdiction.

Article 911a, V.A.C.S., delegates authority to the Railroad Commission of Texas over motor bus transportation. That act was prior to the Federal Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq. Said Art. 911a and Art. 1690a, Vernon's Ann. Penal Code of Texas, comprise one Act and together they confer upon the Railroad Commission the authority it has to regulate motor bus transportation.

Article 911a is made up of many sections, and the sections having direct bearing on the instant case, under the facts presented, are as follows:

Sec. 1(c) defines a "Motor Bus Company" as one operating "any motor propelled passenger vehicle not usually operated on or over rails, and engaged in the business of transporting persons for compensation or hire over the public highways within the State of Texas * * *."

Sec. 2 defines as "common carriers" all such motor bus companies, and declares that they "shall not operate any motor propelled passenger vehicle for the regular transportation of persons as passengers for compensation or hire over any public highway in this State except in accordance with the provisions of this Act * * *."

Sec. 3 directs the Commission to determine if there be inadequacy of service, and, where found, "it shall be the duty of the Commission to issue certificate * * *."

Sec. 4(a) declares, concerning the Commission, that, "it is hereby made its duty to supervise and regulate the public service rendered by every motor bus company operating over the highways in this State * * *" and to fix rates, etc.

Section 5 of said article is the specific authority of the Railroad Commission to require a motor bus company to secure from that body a certificate or permit before it may operate for hire over the public highways of this state and reads as follows: "Sec. 5. No motor-bus company shall hereafter regularly operate for the transportation of persons as passengers for compensation or hire over the public highways of this State without first having obtained from the Commission under the provisions of this Act a certificate or permit declaring that the public convenience and necessity require such operation * * *."

Section 5 of Article 911b specifically provides that no motor carrier shall operate as a common carrier for the transportation of property for compensation or hire without first obtaining from the Railroad Commission a certificate of convenience and necessity.

Section 17 of Art. 911a provides that if the Railroad Commission refuses to grant a permit, or if the applicant for the permit is not satisfied with the order of the Railroad Commission, it can appeal to the District Court of Travis County, Texas, for a revision of the ruling or order. Article 1690b P.C. sets out certain penalties for violation of any lawful order of the Railroad Commission or any provision of this act.

Obviously the Railroad Commission claims and asserts authority to prevent said Bus Company's carrying local passengers (intrastate) on the highways of this state without previously obtaining from it a certificate of convenience and necessity so to do. Under the facts, the Bus Lines summarizes the situation which confronts it in this language: "Finding that All American Bus Lines, Inc. is in fact already engaged in a lawful operation of its busses on Texas highways, and that it transports passengers intrastate in other States of the Union until it reaches the Texas line, and that it refuses to transport passengers intrastate in Texas (even though there are vacant seats in its busses which could carry fare-proffering and otherwise qualified Texas travellers seeking transportation wholly within the borders of the State), the District Court in this cause has directed this Appellant to receive and transport such passengers, notwithstanding the provisions of Article 911a."

The effect of the trial court's judgment is to require the American Bus Lines to violate the above provisions of the civil and criminal laws of this State. The judgment operates to suspend said civil and criminal provisions of the Motor Bus Transportation Act, in that it compels the Bus Company to engage in intrastate business in direct violation of the terms of the law which requires it to apply to and obtain a permit or certificate of convenience and necessity from the Railroad Commission of Texas before so engaging.

The lack of power in a court to suspend laws of the state under like circumstances

is pointed out in State v. Ferguson, 133 Tex. 60, 125 S.W.2d 272, 276. That court, in an opinion by Judge Hickman, reviewed at length the power of a district court to suspend the operation of the Motor Carrier Act, the same being challenged as unconstitutional in several particulars. In that opinion the court used the following language pertinent to the contentions and claims here asserted in justification of the judgment below: "To state the nature of this order is to reveal the lack of power in a judge or court to enter it. Section 28 of Article 1 of our State Constitution prescribes that: 'No power of suspending laws in this State shall be exercised except by the Legislature.' That is an expressed denial to the judicial branch of government of any power to suspend any valid statute. Not only may judges and courts not suspend a statute, but neither may they supervise and direct the manner and method of its enforcement by the officers of the executive department of government charged with the duty of enforcing the same. This principle is basic in our system of government."

Further touching upon the validity of the law then under consideration, the opinion in the Ferguson case states: "These statutes have been definitely upheld both by the Supreme Court of the United States and by this, court. Ed Sproles et al. v. T. Binford, Sheriff et al., 286 U.S. 374, 52 S. Ct. 581, 76 L.Ed. 1167; Ex Parte Sterling, 122 Tex. 108, 53 S.W.2d 294."

■ Under the statutes and authorities cited, we are of the opinion there is no law in the state which permits any district court other than in Travis County to in any wise supervise, sustain, or overrule the actions of the Railroad Commission in granting or refusing permits or certificates of convenience and necessity for the carrying of intrastate passengers under the Motor Transportation Act. The question as to whether the American Motor Bus Lines is entitled, as a matter of law, to a certificate of convenience and necessity to carry on an intrastate passenger business was not and could not legally be before the District Court of Stephens County. Such question could only be determined first by the Railroad Commission of this State and then on appeal to the District Court of Travis County in event the applicant was not satisfied with the orders of the Commission. Fundamentally, this is so because

the trial court was without authority to suspend the laws of this state governing in such matters.

We sustain the above points advanced by the two appellants, respectively.

In response to the Railroad Commission's fifth point, and with specific regard to the proper field of motor bus transportation subject to regulation by federal and state governments, respectively, other reasons and authorities for such disposition of this appeal will now be stated.

By point 5 the Railroad Commission insists that the trial court erred in overruling its plea in abatement and in granting the mandatory injunction herein, because the record shows affirmatively (1) that the American Bus Lines, Inc., does not have any permit of convenience and necessity to engage in intrastate passenger business, (2) the Texas Railroad Commission has exclusive original jurisdiction to issue the same, and (3) the District Court of Travis County has exclusive jurisdiction of appeals from the orders of the Railroad Commission.

We are of the opinion the record conclusively supports each fact allegation embraced in the different sections of point 5. The facts of the case will not be here restated.

It is elementary that the federal government through the Interstate Commerce Commission has taken over the control of and supervises interstate travel by bus. The relative congressional act specifically provides that it is not intended to and will not in any way interfere with the State's controlling such intrastate business.

The federal act, 49 U.S.C.A. § 302(a) and (b), reads as follows:

" "(a) The provisions of this chapter apply to the transportation of passengers or property by motor carriers engaged in interstate or foreign commerce and to the procurement of and the provision of facilities for such transportation, and the regulation of such transportation, and of the procurement thereof, and the provision of facilities therefor, is hereby vested in the Interstate Commerce Commission.

"(b) Nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State

of the power of regulation of intrastate commerce by motor carriers on the highways thereof."

Our Motor Bus Act (Art. 911a), insofar as it requires a carrier to have an intrastate certificate of convenience and necessity, is quite similar, in effect to the Motor Carrier Act, Article 911b. The pertinent part of Article 911a, sec. 5, Vernon's A. C. S., reads as follows: "No motorbus company shall hereafter regularly operate for the transportation of persons as passengers for compensation or hire over the public highways of this State without first having obtained from the Commission under the provisions of this Act a certificate or permit declaring that the public convenience and necessity require such operation; * * *."

The corresponding part of Article 911b, sec. 3, of said statute reads as follows: "Sec. 3. No motor carrier shall, after this Act goes into effect, operate as a common carrier without first having obtained from the Commission, under the provisions of this Act, a certificate of public convenience and necessity pursuant to a finding to the effect that the public convenience and necessity require such operation. * * *"

The exclusive sphere of regulation and control of commerce as between the state and federal government is very clearly stated in Tucker v. Casualty Reciprocal Exchange, D.C., 40 F.Supp. 383, 385, which reads, in part, as follows: "However, the Motor Carrier Act of 1935 is not only a case where Congress does not assume to occupy the entire and exclusive field of transportation by motor carriers, but on the contrary evidences by explicit language an express intention to leave intrastate commerce by motor carriers to the control of the several States. Its declaration of policy, Title 49, § 302(c), U.S.C.A. provides: 'Nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof.'"

That was a case in which the court held that the requirement of the Georgia Public Service Commission that an interstate carrier must file an indemnity bond protecting the public was valid. In discussing the two types of transportation and the conse-quences resulting therefrom, reference is made in the Tucker case to the opinion in Eichholz v. Public Service Commission of Missouri, 306 U.S. 268, 273, 622, 59 S.Ct. 532, 83 L.Ed. 641, in this language: "As there stated, a carrier under the Motor Carrier Act of 1935 has 'his choice either to refrain from carrying property between points in (the State) or to secure a certificate of public convenience and necessity as an intrastate carrier.'"

Lowe v. Stoutamire, 123 Fla. 135, 166 So. 310, is a very clear holding by the Supreme Court of Florida to the effect that the United States Motor Carrier Act did not impair the rights of the states to control intrastate commerce.

The respective fields of regulation of interstate and intrastate transportation of property and persons, as between the state and federal government, have been carefully considered and pointed out in the opinions of the appellate courts of this state. Ex parte Truelock, 139 Tex.Cr.R. 365, 140 S.W.2d 167, and many authorities there cited.

In line with the Truelock opinion is that of Tips v. Railroad Commission, Tex.Civ. App., 110 S.W.2d 585, 586, writ refused. In that case Tips, the carrier, applied to the District Court of Travis County for an order restraining the Railroad Commission from interfering with him in using and operating his trucks over the highways of Texas. In part, he contended "that his authority to operate his trucks was referable to and authorized by the Federal Motor Carrier Act * * *, and that consent of the state commission was not necessary for his interstate operations." The Commission's answer and the evidence disclosed that Tips was, in fact, also engaged in intrastate commerce. The court, in denying him any relief, said: "* * * Manifestly, where a motor carrier is engaged in both interstate and intrastate, commerce, the federal commission and the state commission of the state in which he operates may each require of him a certificate or permit to engage as such motor carrier. The Federal Motor Carrier Act specifically provides that it shall apply only to 'motor carriers engaged in interstate or foreign commerce'; and that 'nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the ex-

**998**

clusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof.' Title 49, § 302(b) and (c), United States Code Annotated. * * *"

The authority of the Bus Lines to carry intrastate passengers in Texas and to achieve or establish that right through the orders and decrees of the District Court of Stephens County is necessarily precluded by the foregoing statutes and authorities and those following. Such right to so operate must be by an application based on permission of the Railroad Commission of Texas and be evidenced by the Commission's permit or certificate of convenience and necessity therefor.

In Railroad Commission v. McDonald Motor Freight Lines, 127 S.W.2d 932, 934, the Court of Civil Appeals of Waco in a case originating in the District Court of Limestone County, speaking through Justice Alexander, held that the Railroad Commission alone had the power to determine as an original proposition who should and should not obtain permits or certificates of convenience and necessity to operate trucks or busses upon the highways of Texas, and in overruling the contention that the Railroad Commission had acted arbitrarily used this significant language: "All such matters could be raised in a hearing before the Railroad Commission on an application for certificate, and if the Commission should act arbitrarily in the matter, such decision could be reviewed by an appeal to the district courts of Travis county, as provided in Vernon's Ann. Civ. St., art. 911b. Jurisdiction to review such a decision lies exclusively in the district courts of Travis county. It cannot be reviewed by an independent suit brought in some other county in the state."

To the same effect is Terrell v. Community Natural Gas Co., Tex.Civ.App., 117 S.W.2d 838, 841. There the question was raised in the District Court of Dallas County that the Railroad Commission was undertaking to act outside of and beyond the scope of its authority, and that its actions were, therefore, null and void, and for such reason, the District Court of Travis County did not have exclusive jurisdiction to issue the orders which it had promulgated. That contention was overruled and the court stated its reasons therefor as follows:

"The contention of appellees is that, incorporated cities and towns, as authorized by Art. 1119 (amended in 1937 * * *), and Art. 1175, subd. 12,· are given exclusive original jurisdiction to determine and fix the compensation to be charged by utilities for gas furnished customers in incorporated cities and towns; that the jurisdiction of the Commission over the subject is only appellate, as provided in Art. 6058; that the orders adopted by the Commission, and the action taken and threatened thereunder complained of, being wholly unauthorized by statute, were void; hence the district court of Dallas County has jurisdiction to entertain the suit and grant the relief sought.

" * * * The case, in our opinion, is clearly within Art. 6059, R.S., over which jurisdiction is given—a court of competent jurisdiction in Travis County. This jurisdiction being exclusive, the case is not removed from that category by reason of the insistence of appellees that the orders adopted and the acts had and threatened thereunder by appellants are utterly void."

■ Further, in Ex Parte Sterling, 122 Tex. 108, 53 S.W.2d 294, 295, our Supreme Court definitely held that a district judge does not have the power or authority to restrain inforcement of the Motor Transportation Act, and also stated "its enactment" to be "a valid exercise of the legislative power of this state to regulate the operation of motor vehicles using the highways for profit."

We sustain point 5, and for the reasons assigned, the judgment of the trial court is reversed and judgment is here rendered for appellants, respectively.